**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**

| | |
|---|---|
| TELCOM VENTURES LLC,<br><br>                Plaintiff,<br><br>      v.<br><br>APPLE INC.,<br><br>                Defendant. | Case No. 1:24-cv-23837-JEM |

## DEFENDANT APPLE INC.'S NOTICE OF MOTION TO DISMISS UNDER FED. R. CIV. P. 12(B)(6) AND MEMORANDUM IN SUPPORT

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.     INTRODUCTION ................................................................................................ 1

II.    BACKGROUND AND STATEMENT OF FACTS ............................................ 3

III.   LEGAL STANDARDS ........................................................................................ 5

      A.    Rule 12(b)(6) Motion To Dismiss For Invalidity Under 35 U.S.C. § 101 ............. 5

      B.    Patent Eligibility Under 35 U.S.C. § 101 ............................................................. 6

IV.   THE ASSERTED PATENTS' CLAIMS ARE DIRECTED TO PATENT-INELIGIBLE SUBJECT MATTER UNDER 35 U.S.C. § 101 ............................................................. 7

      A.    *Alice* Step One: Telcom's Claims Are Directed To The Abstract Idea Of Controlling Whether To Transmit Data Based On Collecting And Assessing Information As Criteria ............................................................................................ 7

      B.    *Alice* Step Two: Telcom's Claims Lack An Inventive Concept That Transforms The Claims Into "Significantly More" Than The Abstract Idea .......................... 13

      C.    Claim 1 Of The '411 Patent Is Representative Of All Claims And Nothing In The Remaining Claims Imparts Patentability ............................................................. 16

V.    CONCLUSION ................................................................................................. 20

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Accenture Global Servs., GmbH v. Guidewire Software, Inc.*,
  728 F.3d 1336 (Fed. Cir. 2013)...........................................................................................19

*Alice Corp. Pty. v. CLS Bank Int'l*,
  573 U.S. 208 (2014)..................................................................................................... *passim*

*Apple Inc. v. Ameranth, Inc.*,
  842 F.3d 1229 (Fed. Cir. 2016)...........................................................................................12

*Beteiro, LLC v. BetMGM, LLC*,
  626 F. Supp. 3d 789 (D.N.J. 2022),
  *reconsideration denied sub nom. Beteiro v. BetMGM*, No. 1:21-CV-20156,
  2022 WL 20690174 (D.N.J. Nov. 4, 2022) ..........................................................................11

*Beteiro, LLC v. DraftKings Inc.*,
  104 F.4th 1350 (Fed. Cir. 2024) ...................................................................................... *passim*

*buySAFE, Inc. v. Google, Inc.*,
  765 F.3d 1350 (Fed. Cir. 2014)...........................................................................................19

*Chaparro v. Carnival Corp.*,
  693 F.3d 1333 (11th Cir. 2012) .............................................................................................6

*Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*,
  776 F.3d 1343 (Fed. Cir. 2014)..............................................................................................7

*Elec. Commc'n Techs., LLC v. Minted, LLC*,
  Case No. 16-cv-81677-MARRA (S.D. Fla. Jan. 18, 2019) ................................................5, 6

*Elec. Commc'n Techs., LLC v. ShoppersChoice.com, LLC*,
  958 F.3d 1178 (Fed. Cir. 2020)......................................................................................11, 12

*Elec. Power Grp., LLC v. Alstom S.A.*,
  830 F.3d 1350 (Fed. Cir. 2016)...................................................................................... *passim*

*Enovsys LLC v. Uber Techs., Inc.*,
  No. 23-CV-04549-EJD, 2024 WL 3033995 (N.D. Cal. June 17, 2024)...................................3

*Hill v. White*,
  321 F.3d 1334 (11th Cir. 2003) .............................................................................................6

*Intell. Ventures I LLC v. Cap. One Bank (USA)*,
  792 F.3d 1363 (Fed. Cir. 2015)........................................................................................1, 19

*Intell. Ventures I LLC v. Cap. One Fin. Corp.*,
850 F.3d 1332 (Fed. Cir. 2017)..................................................................................18, 19

*Intell. Ventures I LLC v. Symantec Corp.*,
838 F.3d 1307 (Fed. Cir. 2016)............................................................................................11

*Mobile Acuity Ltd. v. Blippar Ltd.*,
110 F.4th 1280 (Fed. Cir. 2024) .........................................................................................16

*NantWorks, LLC v. Niantic, Inc.*,
Case No. 20-cv-06262-LB, 2021 WL 24850 (N.D. Cal. Jan. 4, 2021) ..............................5, 11

*OpenTV, Inc. v. Apple Inc.*,
Case No. 5:15-cv-02008-EJD, 2016 WL 344845 (N.D. Cal. Jan. 28, 2016).....................5, 11

*Prism Techs. LLC v. T-Mobile USA, Inc.*,
696 F. App'x 1014 (Fed. Cir. 2017) ...........................................................................9, 10, 14

*Sanderling Mgmt. Ltd. v. Snap Inc.*,
65 F.4th 698 (Fed. Cir. 2023) ...............................................................................................3

*Smartflash LLC v. Apple Inc.*,
680 F. App'x 977 (Fed. Cir. 2017) .......................................................................................10

*TDE Petroleum Data Sols., Inc., v. AKM Enter., Inc.*,
657 F. App'x 991 (Fed. Cir. 2016) ...................................................................................2, 15

*TecSec, Inc. v. Adobe Inc.*,
978 F.3d 1278 (Fed. Cir. 2020).............................................................................................6

*Universal Secure Registry LLC v. Apple Inc.*,
10 F.4th 1342 (Fed. Cir. 2021) ...................................................................................*passim*

*Wireless Discovery LLC v. eHarmony, Inc.*,
654 F. Supp. 3d 360 (D. Del. 2023) *aff'd sub nom. Wireless Discovery LLC v.
Meet Grp., Inc.*, No. 2023-1582, 2024 WL 3336763 (Fed. Cir. July 9, 2024) ........................3

*Yu v. Apple, Inc.*,
1 F.4th 1040 (Fed. Cir. 2021) ..............................................................................................13

**Statutes**

35 U.S.C. § 101...........................................................................................................*passim*

**Other Authorities**

Federal Rule of Civil Procedure 12(b)(6) ..........................................................................1, 5, 6

## TABLE OF EXHIBITS

| Exhibit | Description |
|---------|-------------|
| A | U.S. Patent No. 9,462,411<br>(the "'411 Patent," also attached to Complaint as Dkt. 1-1) |
| B | U.S. Patent No. 9,832,708<br>(the "'708 Patent," also attached to Complaint as Dkt. 1-2) |
| C | U.S. Patent No. 10,219,199<br>(the "'199 Patent," also attached to Complaint as Dkt. 1-3) |
| D | U.S. Patent No. 10,674,432<br>(the "'432 Patent," also attached to Complaint as Dkt. 1-4) |
| E | U.S. Patent No. 11,770,756<br>(the "'756 Patent," also attached to Complaint as Dkt. 1-5) |
| F | U.S. Patent No. 11,924,743<br>(the "'743 Patent," also attached to Complaint as Dkt. 1-6) |
| G | U.S. Patent No. 11,937,172<br>(the "'172 Patent," also attached to Complaint as Dkt. 1-7) |
| H | U.S. Patent No. 12,028,793<br>(the "'793 Patent," also attached to Complaint as Dkt. 1-8) |
| I | Annotated comparison between claim 1 of the '411 Patent and each of the independent method claims of the remaining Asserted Patents |

**<u>REQUEST FOR HEARING</u>**

Pursuant to L.R. 7.1(b)(2), Apple Inc. respectfully requests oral argument on this Motion. Apple believes that oral argument could assist the Court in resolving the Motion—which is dispositive—including because the parties could answer any questions the Court may have upon completion of briefing.  Apple estimates 30 minutes per side for oral argument.

<u>**NOTICE OF MOTION AND MOTION TO DISMISS**</u>

Defendant Apple Inc. ("Apple") moves under Federal Rule of Civil Procedure 12(b)(6) to dismiss with prejudice plaintiff Telcom Ventures LLC's ("Telcom") Complaint (Dkt. 1) for failure to state a claim upon which relief may be granted.  As explained in the attached Memorandum, Telcom's claims of patent infringement against Apple should be dismissed because all claims of U.S. Patent Nos. 9,462,411, 9,832,708, 10,219,199, 10,674,432, 11,770,756, 11,924,743, 11,937,172, and 12,028,793 (collectively, "the Asserted Patents") are invalid under 35 U.S.C. § 101.

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

**I.      INTRODUCTION**

Telcom's patent claims fail the requirements for patent eligibility under 35 U.S.C. § 101. In particular, they are directed to controlling whether to transmit data based on collecting and assessing information as criteria.  Claim 1 of the '411 patent is representative of the set and recites "sensing . . . physiological data associated with a living organism," "detecting . . . a proximity criterion," and then communicating data or not based on that information.  Among the numerous claims in the eight patents asserted by Telcom, some limit the transmission of data to "financial transactions"; some say the communication happens over licensed or unlicensed frequencies or WiFi; and some specify use of a smartphone or a base station.  But bells and whistles "limiting the invention to a particular field of use or technological environment" are immaterial for purposes of assessing patent eligibility under Section 101.  *Intell. Ventures I LLC v. Cap. One Bank (USA)*, 792 F.3d 1363, 1366 (Fed. Cir. 2015).  At the first step of the two-step process for analyzing patent eligibility set forth in *Alice Corp. Pty. v. CLS Bank Int'l* (573 U.S. 208 (2014)), Telcom's claims are directed to the abstract idea of deciding whether to transmit data based on collecting and assessing information as criteria.

Several telltale signs confirm the claims are directed to an abstract idea. First, the Federal Circuit has long made clear that claims about collecting and analyzing data are directed to an abstract idea and not eligible for patent protection under Section 101. *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1353–54 (Fed. Cir. 2016). Second, the Federal Circuit also looks to whether the claims are directed to activity analogous to long-standing human activity. Telcom's claims' focus on examining a user's physiological information (which Telcom asserts covers "facial geometry or a fingerprint") and proximity to an "entity" (which Telcom asserts to be a point of sale) before permitting a transaction is just that. *See Universal Secure Registry LLC v. Apple Inc.*, 10 F.4th 1342, 1353 (Fed. Cir. 2021) ("*USR*") ("verifying the identity of a user to facilitate a transaction is a fundamental economic practice that has been performed at the point of sale well before the use of POS computers and Internet transactions") (citing *Alice* Step One precedent) (affirming district court's grant of motion to dismiss complaint because asserted patents' claims failed to satisfy Section 101). And third, the claims are written in results-oriented steps— "sensing," "detecting," "selectively communicating"—which "almost always" fails Section 101. *Beteiro, LLC v. DraftKings Inc.*, 104 F.4th 1350, 1355–56 (Fed. Cir. 2024).

Telcom's claims also fail the second step of the *Alice* framework—whether the claims include an "inventive concept" that transforms the nature of the claim into a patent-eligible application of the abstract idea. A classic tell of claims that fail step two is that they recite the "what" but not the "how." *TDE Petroleum Data Sols., Inc., v. AKM Enter., Inc.*, 657 F. App'x 991, 993 (Fed. Cir. 2016) ("[T]he claims . . . recite the *what* of the invention, but none of the *how* that is necessary to turn the abstract idea into a patent-eligible application."). Telcom's claims recite the what—get physiological data, get proximity data, transmit data—but not the how, such as a description of a new physiological sensor, a new proximity sensor, or a new way of transmitting

information.  Instead, its claims recite conventional hardware and protocols—"smartphone," "sensor," "base station," "WiFi."  *See Elec. Power Grp.*, 830 F.3d at 1355 ("Nothing in the claims, understood in light of the specification, requires anything other than off-the-shelf, conventional computer, network, and display technology for gathering, sending, and presenting the desired information.").  Considering the steps in the specific order in which they are recited likewise fails to reveal any inventive concept—the steps follow the obvious order of checking criteria before deciding if the conditions are met to transmit data.  Thus, Telcom's claims fail *Alice* Step Two.

Because Telcom's claims fail both steps of *Alice*, the Court should dismiss Telcom's Complaint in its entirety.  And because this flaw in the patents cannot be corrected by amending the Complaint, the Court should dismiss the Complaint with prejudice.  *See Sanderling Mgmt. Ltd. v. Snap Inc.*, 65 F.4th 698, 706 (Fed. Cir. 2023) ("No amendment to a complaint can alter what a patent itself states.") (affirming district court's grant of motion to dismiss for lack of subject matter eligibility and denial of motion for leave to amend complaint); *Wireless Discovery LLC v. eHarmony, Inc.*, 654 F. Supp. 3d 360, 376 (D. Del. 2023) ("The claims of the patents say what they say.  Amending the complaint would not change the Court's § 101 analysis.") (granting motion to dismiss for lack of subject matter eligibility and denying motion for leave to amend complaint) *aff'd sub nom. Wireless Discovery LLC v. Meet Grp., Inc.*, No. 2023-1582, 2024 WL 3336763 (Fed. Cir. July 9, 2024); *Enovsys LLC v. Uber Techs., Inc.*, No. 23-CV-04549-EJD, 2024 WL 3033995, at *11 (N.D. Cal. June 17, 2024) (similar).

## II.    BACKGROUND AND STATEMENT OF FACTS

The Asserted Patents purport to address a need for a mobile device to "act as a 'wallet' . . . only when it is time to pay for an item and not act as a wallet when there is no need to do so."  Ex. A ('411 patent) at 1:24–27.  The Asserted Patents claim to address that need by "provid[ing] systems, devices and/or methods that may be used to enable adaptively one or more

modes/functions of a device based upon having satisfied by the device (or another device) a proximity condition/criterion." Ex. A at 1:29–34. The Asserted Patents provide high-level examples such as enabling the ability to pay a toll near a toll collection access point (*id.* at 4:18–5:61 ("Example/Application No. 1")), enabling a "pay" function when a device is "proximate to a 'check-out' counter/location," and enabling/disabling various conventional communication interfaces depending on a proximity criterion and "at least one other parameter." *See id.* at 5:65–8:50 ("Example/Application No. 2" and "No. 3"). All Asserted Patents claim priority to the '411 Patent's application and share the same specification. *See* Exs. A–H. In essence, the patents supposedly solve the problem of having a mobile device act as a wallet only under certain conditions by specifying in results-oriented language that a mobile device shall act as a wallet only under certain conditions.

Claim 1 of the '411 patent, which is representative for purposes of Section 101 analysis,[1] cloaks the alleged invention in verbose wording, but its focus is controlling whether to transmit data based on collecting and assessing information as criteria:

1. A method comprising:

***sensing*** by a smartphone, using a smartphone-based sensor, physiological data associated with a living organism;

***detecting*** that a proximity criterion is satisfied between the smartphone and an entity, wherein the entity is not the living organism;

***selectively communicating*** by the smartphone using a first air interface of a plurality of air interfaces with which the smartphone is capable of communicating, responsive to the proximity criterion having been detected as being satisfied and responsive to a value of the physiological data associated with a living organism that was sensed by the smartphone using the smartphone-based sensor;

***refraining from communicating*** by the smartphone using the first air interface absent said value of the physiological data associated with a living organism that

---

[1] *See* Section IV.C, *infra*, for analysis of why claim 1 is representative for Section 101 purposes.

was sensed by the smartphone using the smartphone-based sensor satisfying a criterion, even though the proximity criterion is detected as being satisfied;

***selectively sending information*** by the smartphone to one or more other devices ***and receiving information*** by the smartphone from the one or more other devices responsive to said value of the physiological data associated with a living organism that was sensed by the smartphone using the smartphone-based sensor satisfying the criterion; and

***communicating*** by the smartphone using a second air interface of the plurality of air interfaces with which the smartphone is capable of communicating that differs from the first air interface.

Ex. A, claim 1 (the "Representative Claim").

Telcom alleges that Apple infringes "at least claim 1" of each Asserted Patent.  Dkt. 1 ¶¶ 63, 74, 85, 96, 107, 118, 129, 140.  Telcom asserts that "using an iPhone to conduct financial transactions via Apple Pay" infringes.  Dkt. 1-9 at 1.  Telcom further asserts that the claims' requirement for "physiological data" is satisfied by "facial geometry or a fingerprint" and that the "proximity criterion" is met because "an iPhone can detect the Near Field Communication (NFC) field radiated by a point-of-sale terminal."  *Id.* at 1, 4.  The only statement in the Complaint about subject matter eligibility is a conclusory assertion that each patent "claims patent-eligible subject matter."  Dkt. 1. at 4–8.

## III.   LEGAL STANDARDS

### A.   Rule 12(b)(6) Motion To Dismiss For Invalidity Under 35 U.S.C. § 101

"[P]atent eligibility can be determined at the Rule 12(b)(6) stage 'when there are no factual allegations that, taken as true, prevent resolving the eligibility question as a matter of law.'"  *USR*, 10 F.4th at 1346 (citations omitted) (affirming district court's grant of motion to dismiss for lack of subject matter eligibility); *see also, e.g.*, *DraftKings*, 104 F.4th 1350 (same); *OpenTV, Inc. v. Apple Inc.*, Case No. 5:15-cv-02008-EJD, 2016 WL 344845 (N.D. Cal. Jan. 28, 2016) (granting motion to dismiss for lack of subject matter eligibility); *NantWorks, LLC v. Niantic, Inc.*, Case No.

20-cv-06262-LB, 2021 WL 24850 (N.D. Cal. Jan. 4, 2021) (same); *Elec. Commc'n Techs., LLC v. Minted, LLC*, Case No. 16-cv-81677-MARRA (S.D. Fla. Jan. 18, 2019) (converting motion to dismiss for lack of subject matter eligibility to motion for judgment on the pleadings and granting).

For purposes of a Rule 12(b)(6) motion, the Court "accept[s] the allegations in the complaint as true and constru[es] them in the light most favorable to the plaintiff." *Hill v. White*, 321 F.3d 1334, 1335 (11th Cir. 2003) (citations omitted). "But if allegations are indeed more conclusory than factual, then the court does not have to assume their truth." *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012) (citations omitted).

### B.    Patent Eligibility Under 35 U.S.C. § 101

Section 101 states that anyone who "invents or discovers any new and useful process, machine, manufacture, or composition of matter, or new and useful improvement thereof, may obtain a patent." 35 U.S.C. § 101. Claims directed to abstract ideas, however, are not patent eligible because patent protection does not extend to claims that monopolize the "building blocks of human ingenuity." *Alice*, 573 U.S. at 216. To distinguish between claims that set forth patent ineligible subject matter and claims "that integrate the building blocks into something more," courts apply the two-step framework detailed in *Alice*. *Id.* at 217; *see, e.g.*, *USR*, 10 F.4th 1342 (affirming grant of motion to dismiss applying *Alice* framework).

At *Alice* Step One, courts "determine whether the claims at issue are directed to a patent-ineligible concept," such as an abstract idea. *Id.* at 218. Courts approach *Alice* Step One by "looking at the 'focus' of the claims, their 'character as a whole.'" *Elec. Power Grp.*, 830 F.3d at 1353 (citations omitted). For "cases involving software innovations, this inquiry often turns on whether the claims focus on specific asserted improvements in computer capabilities or instead on a process or system that qualifies as an abstract idea for which computers are invoked merely as a tool." *TecSec, Inc. v. Adobe Inc.*, 978 F.3d 1278, 1293 (Fed. Cir. 2020) (citations omitted). If the

6

claims are directed to an abstract idea, courts move on to *Alice* Step Two.

At *Alice* Step Two, courts "consider the elements of each claim both individually and 'as an ordered combination' to determine whether the additional elements 'transform the nature of the claim' into a patent-eligible application" of the abstract idea. *Alice*, 573 U.S. at 217 (citation omitted). "For the role of a computer in a computer-implemented invention to be deemed meaningful in the context of this analysis, it must involve more than performance of 'well-understood, routine, [and] conventional activities previously known to the industry.'" *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*, 776 F.3d 1343, 1347–48 (Fed. Cir. 2014) (alteration in original) (citation omitted).

## IV.    THE ASSERTED PATENTS' CLAIMS ARE DIRECTED TO PATENT-INELIGIBLE SUBJECT MATTER UNDER 35 U.S.C. § 101

Telcom's claims are directed to the abstract idea of controlling whether to transmit data based on collecting and assessing information as criteria—subject matter that the Federal Circuit has regularly held to be abstract—and invoke only generic or conventional computing components and functions for implementing that abstract idea. Accordingly, they are invalid under Section 101.

### A.    *Alice* Step One: Telcom's Claims Are Directed To The Abstract Idea Of Controlling Whether To Transmit Data Based On Collecting And Assessing Information As Criteria

*Alice* Step One considers whether a claim's "focus" is directed to an abstract idea. *See, e.g.*, *Elec. Power Grp.*, 830 F.3d at 1353. Stripped of excess verbiage, the Representative Claim is directed to use of a smartphone to: (1) sense physiological data; (2) detect that a proximity criterion is satisfied; and (3) "communicate," or not communicate, based on the physiological data and proximity criterion. *See* Ex. A, claim 1. The "focus" of that process is the abstract idea of controlling whether to transmit data based on collecting and assessing information as criteria—

concepts that the Federal Circuit has held to be ineligible abstract ideas.  The abstract nature of the claims is further confirmed by the claims' focus on activity analogous to a longstanding economic practice dating back decades before the purported invention and the results-oriented, functional nature of the claim language.

*First*, the Federal Circuit has found claims directed to collecting, analyzing, and acting on information to be directed to abstract ideas.  For example, in *Electric Power Group*, the Federal Circuit found claims about "collecting information, analyzing it, and displaying certain results of the collection and analysis" directed to an abstract idea.  *Elec. Power Grp.*, 830 F.3d at 1353–54.  "The advance [the claims] purport to make is a process of gathering and analyzing information of a specified content, then [providing] the results, and not any particular assertedly inventive technology for performing those functions."  *Elec. Power Grp.*, 830 F.3d at 1354.  Just like the *Electric Power Group* claims, Telcom's claims are directed to collecting information (physiological and proximity information) and analyzing it.  *See* Ex. A, claim 1.   Likewise, Telcom's claims include the ancillary step of taking action based on that collection and analysis— instead of displaying information like in *Electric Power*, Telcom's claims use the information as criteria for allowing or disallowing transmission of data.  *See id.*  And like the claims of *Electric Power*, Telcom's claims do not recite any new technology—smartphones, wireless communication interfaces, and an "entity" to interact with all existed before the alleged invention.  Thus, for the same reasons as in *Electric Power*, Telcom's claims are directed to an abstract idea because they too simply collect, analyze, and act on information.

Numerous other Federal Circuit decisions illustrate that claims regarding collecting, analyzing, and acting on information, such as Telcom's, are directed to abstract ideas.  In *Universal Secure Registry LLC v. Apple Inc.*, the Federal Circuit found claims about "multifactor

authentication of a user's identity using two devices to enable a transaction" to be directed to abstract ideas. 10 F.4th 1354. The claims were similar to Telcom's. They included collecting biometric and other inputs as a basis for authentication for a transaction. *See id.* at 1352–58. The court highlighted the fact that "the claimed invention merely combines conventional authentication techniques—first authentication information, a biometric authentication indicator, and a time-varying value—to achieve an expected cumulative higher degree of authentication integrity.'" *Id.* at 1357.

Telcom's claims are not meaningfully different from *USR*'s for purposes of Section 101 and fail for the same reasons. Like those of *USR*, Telcom's claims look at criteria (in *USR*'s terminology "factors") to permit a transaction. And, as with the *USR* patents, the Asserted Patents' specifications confirm the methods and devices recited in the claims were conventional. *See, e.g.*, Ex. A at 1:37–39 (stating "wireless mobile device" is "any electronic device that may be used to transmit/receive information wirelessly and/or non-wirelessly"), 3:30–39 (the "entity" includes "a person, an animal, a vehicle . . ., a building, a product . . ., a store . . ., a shopping cart . . ., a multi-dimensional region in time and/or space"), 7:3–13 ("air interface protocol" includes "WiFi"). Since the claims of Telcom's patent merely collect and act on information by "combin[ing] . . . conventional techniques" like in *USR*, they are directed to an abstract idea.

Yet another example of the Federal Circuit finding claims about collecting and analyzing information, like Telcom's, to be directed to an abstract idea is *Prism Techs. LLC v. T-Mobile USA, Inc.* 696 F. App'x 1014 (Fed. Cir. 2017). There, the court addressed claims about "systems and methods that control access to protected computer resources by authenticating identity data." *Id.* at 1016. The court found those claims directed to "the abstract idea of 'providing restricted access to resources'" that included: "(1) receiving identity data from a device with a request for access to

resources; (2) confirming the authenticity of the identity data associated with that device; (3) determining whether the device identified is authorized to access the resources requested; and (4) if authorized, permitting access to the requested resources." *See id.* at 1017; Ex. A, claim 1. Similarly, Telcom's claims recite "sensing . . . physiological data," "detecting that a proximity criterion is satisfied," and "selectively communicating" based on physiological and proximity criteria being satisfied. Ex. A, claim 1. Telcom's claims strongly parallel Prism's—like controlling access to resources based on criteria in *Prism*, Telcom's claims control whether data is transmitted based on criteria. Thus, Telcom's claims are directed to an abstract idea.

In *Smartflash LLC v. Apple Inc.*, the Federal Circuit found yet another set of claims similar to the Representative Claim here abstract. 680 F. App'x 977 (Fed. Cir. 2017). There, the patents described "systems comprising data carriers, or 'terminals'"—which could be integrated with mobile communication devices—that "could receive and validate payments from users and then retrieve and provide data [] over the Internet." *See id.* at 978. The *Smartflash* claims "purport[ed] to retrieve and provide th[e] data subject to 'payment validation' and 'access/use rule[s].'" *Id.* at 982. The Federal Circuit held that the claims were "directed to the abstract idea of 'conditioning and controlling access to data.'" *Id.* at 982–83. Like the claims in *Smartflash*, Telcom's Representative Claim controls access to data based on parameters such as physiological data and proximity, and is therefore directed to an abstract idea. Moreover, in finding the claims abstract, the *Smartflash* court relied upon the fact that the "claims here invoke computers merely as tools." *Id.* at 982. The same is true of Telcom's claims—they invoke a "smartphone," a "sensor," an "entity," and "interfaces" merely as tools to carry out the steps recited in the claims. They do not claim to have invented a new version of any such components.

In addition to the Federal Circuit, the district courts have likewise found claims regarding

controlling data transmission based on collecting and analyzing information as criteria to be directed to abstract ideas. *See, e.g.*, *OpenTV*, 2016 WL 344845, at *5 (noting the conventional nature of "controlling access to information by verifying credentials" and holding claims "directed to the abstract idea of controlling access rights of software applications to access other software applications"); *Beteiro, LLC v. BetMGM, LLC*, 626 F. Supp. 3d 789, 800 (D.N.J. 2022) (holding that "the concept of taking action in response to location-based information . . . is abstract and patent-ineligible"), *reconsideration denied sub nom. Beteiro v. BetMGM*, No. 1:21-CV-20156, 2022 WL 20690174 (D.N.J. Nov. 4, 2022), and *aff'd sub nom. DraftKings*, 104 F.4th 1350; *NantWorks*, 2021 WL 24850 (holding claims related to reconciling transactions based on whether location-based criterion met "directed to the abstract idea of reconciling transactions . . . based on a user's location").

In sum, Telcom's claims fall within the long line of cases finding claims about collecting information, analyzing it, and acting upon it directed to abstract ideas.

**Second**, the Federal Circuit has explained that in determining whether patent claims are directed to an abstract idea, it is helpful to consider whether they are analogous "to longstanding 'real-world' ('brick and mortar') activities." *DraftKings*, 104 F.4th at 1356 (citing *Intell. Ventures I LLC v. Symantec Corp.*, 838 F.3d 1307, 1314 (Fed. Cir. 2016)). For Telcom's claims, the answer is yes. For example, it was long a standard practice in retail stores that a customer must be at the point-of-sale (i.e. within proximity of the card reader) and present photo identification (in a similar vein to what Telcom's asserts as physiological data) before he or she could make a credit card purchase. In fact, the Federal Circuit has specifically found that "verifying the identity of a user to facilitate a transaction is a fundamental economic practice that has been performed at the point of sale well before the use of POS computers and Internet transactions." *USR*, 10 F.4th at 1353

(finding claims ineligible under Section 101) (citing *Elec. Commc'n Techs., LLC v. ShoppersChoice.com, LLC*, 958 F.3d 1178, 1182 (Fed. Cir. 2020)).  Telcom's claims fit that mold—they collect and examine "a proximity criterion" and "physiological data associated with a living organism" to decide whether to transmit data, such as allowing a financial transaction.  The Asserted Patents even cite the long-standing human activity of shopping at the supermarket as an example.  *See* Ex. A at 8:41–50 ("the wireless communications device [is] . . . proximate to a 'check-out' counter/location" before "the wireless communications device . . . may enable a 'pay' function").

*DraftKings* is instructive.  There, the Federal Circuit found claims about proximity information to be abstract in part by analogy to longstanding human activity.  The claims were directed to the abstract idea of "exchanging information concerning a bet and allowing or disallowing the bet based on where the user is located."  *DraftKings*, 104 F.4th at 1355 (internal quotation marks omitted).  The court arrived at that conclusion in part based on finding the claims to be analogous to longstanding economic activity: "those accepting bets have always had to confirm that the bettor with whom they were dealing was located in a place where gambling was allowed."  *Id.* at 1356 (internal quotation marks omitted).  Like in *DraftKings*, Telcom's claims strongly parallel longstanding economic activity in which person wishing to make a transaction had to satisfy certain conditions, such as being in proximity to a credit card reader.  This confirms that Telcom's claims are directed to an abstract idea.

**Third**, courts often look to whether "claims focus on a specific means or method that improves the relevant technology or are directed to a ***result or effect*** that itself is the abstract idea and merely invoke generic processes and machinery."  *Apple Inc. v. Ameranth, Inc.*, 842 F.3d 1229, 1241 (Fed. Cir. 2016) (citations and internal quotations omitted) (finding claims failed to satisfy

Section 101). Here, Telcom's claims are drafted using largely result-focused functional language containing no specificity about *how* the purported invention achieves those results, which is a "well-settled indicator[] of abstractness." *DraftKings*, 104 F.4th at 1355–56. For example, the Representative Claim does not recite technical details of *how* to sense any form of "physiological data," *how* to measure or determine "a value of the physiological data," *how* to detect whether "proximity criteria" are met, *how* to transmit information "responsive to" those criteria being satisfied, *how* to prevent transmission absent their satisfaction, nor *how* to "selectively communicate" or "selectively send/receive information." Instead, it just says *do* those things. Ex. A, claim 1. "Claims of this nature are almost always found to be ineligible for patenting under Section 101." *DraftKings*, 104 F.4th at 1356 (citations omitted).

In sum, Telcom's claims are directed to the abstract idea of controlling whether to transmit data based on collecting and assessing information as criteria, and thus fail *Alice* Step One.

### B.     *Alice* Step Two: Telcom's Claims Lack An Inventive Concept That Transforms The Claims Into "Significantly More" Than The Abstract Idea

Telcom's claims provide no inventive concept "sufficient to 'transform' the nature of the claim into a patent-eligible application" under *Alice* Step Two. *Alice*, 573 U.S. at 217–18 (internal citations omitted). Instead, they are "recited at a high level of generality and merely invoke[] well-understood, routine, conventional components to apply the abstract idea" of controlling whether to transmit data based on collecting and analyzing information for use as criteria. *Yu v. Apple Inc.*, 1 F.4th 1040, 1045 (Fed. Cir. 2021) (affirming unpatentability under Section 101). Namely, they specify generic components such as a smartphone and sensor along with generic functions such as "sensing . . . physiological data," "detecting . . . a proximity criterion," and "communicating." As the Federal Circuit has "repeatedly held[, ] such invocations of computers and networks that are not even arguably inventive are 'insufficient to pass the test of an inventive concept in the

application' of an abstract idea." *Elec. Power Grp.*, 830 F.3d at 1355 (collecting cases). That is true regardless of whether the claim limitations are considered individually or as an ordered combination, as discussed in turn below.

**First**, considering the claim limitations individually, the recited components are conventional and they are deployed in performing generic steps, all of which strongly indicate a lack of inventive concept. *See, e.g.*, *Prism*, 696 F. App'x at 1018 (finding lack of inventive concept where the "claims merely recite a host of elements that are indisputably generic computer components"); *USR*, 10 F.4th at 1357 (finding lack of inventive concept where "each authentication technique is conventional"); *Elec. Power Grp.*, 830 F.3d at 1355 (finding lack of inventive concept where the "claims at issue do not require any nonconventional computer, network, or display components"). Regarding the components in Telcom's claims, the Representative Claim recites a smartphone, a smartphone-based sensor, first and second air interfaces, and "other devices." *See* Ex. A, claim 1. The specification confirms that the components are conventional. For example, it describes "devices" as "any electronic device that may be used to transmit/receive information wirelessly and/or non-wirelessly." *See, e.g.*, *id.* at 1:35–61; *id.* at 2:60–3:2 (similar). The specification further describes "air interface protocol" as "an Orthogonal Frequency Division Multiplexed and/or an Orthogonal Frequency Division Multiple Access (OFDM/OFDMA) protocol, a WiFi- and/or WiMAX-based." *Id.* at 7:3–13. For assessing "location," the specification refers to the use of "GPS." *Id.* at 5:65–6:16. For physiological information, the specification simply says "sensors" may be used, implicitly acknowledging sensors for such a purpose existed. *Id*.

The Representative Claim invokes those conventional components to perform generic functions, including sensing physiological data, detecting that a proximity criterion is satisfied,

and selectively communicating depending on whether the physiological and proximity criteria are met. *See* Ex. A, claim 1; Section IV.A above. The Representative Claim "recite[s] the ***what***" of such conventional steps, "but none of the ***how*** that is necessary to turn the abstract idea into a patent-eligible application." *See TDE Petroleum Data Sols.*, 657 F. App'x at 993 (italics in original); Section IV.A above. As to physiological data, for example, the Representative Claim recites "sensing by a smartphone, using a smartphone-based sensor, physiological data"—the "what"—but not any purported advance in sensing technology (the "how"). Ex. A, claim 1. This is similar to *USR*, where the Federal Circuit found claims that included obtaining "biometric information" for authentication in a transaction lacked an inventive concept in part because they merely invoked "the routine use of biometric information." *USR*, 10 F.4th at 1354–55.

As to proximity information, the Representative Claim's recitation of "detecting that a proximity criterion is satisfied" similarly lacks any technical detail to suggest an inventive concept. To the contrary, the specification explicitly states that "[t]he step of detecting can be done ***in any number of various ways***." *Id.* at 11:56–67 (describing generic implementations). In fact, the patents describe that "those skilled in the art w[ould] appreciate[ that] the wireless communications device may be configured to estimate its location . . . by, for example, processing GPS signals and/or by using other means and/or sensors that may, according to some embodiments, be device-based and/or network assisted/based means and/or sensors." *Id.* at 6:9–16; *see id.* at 3:3–30 (describing additional generic implementations). Telcom's specification in this respect is like the specification in *DraftKings*, where the Federal Circuit remarked—in the process of finding no inventive concept—that "the patent applicant drafted the specification understanding that a person of ordinary skill in the art knew what GPS" and other location-sensing technologies were, "and that using [them] for the purposes disclosed in the patent was routine, conventional, and well-

understood." *DraftKings*, 104 F.4th at 1354, 1357–59.

The Representative Claim's remaining limitations, such as "selectively communicating," "refraining from communicating" and "selectively sending information . . . and receiving information" do not describe any technique—the "how"—for analyzing the collected data, assessing any criteria, or communicating. Thus, taken individually, the elements of the Representative Claim lack an inventive concept.

***Second***, even as an ordered combination, the claims simply follow the expected sequence of checking that the conditions are met before transmitting data. *See* Ex. A at claim 1. In fact, the specification refutes the notion that the order adds an inventive concept, stating: "embodiments contemplated within the scope of the claims ***are not necessarily limited to a particular order or necessarily include every step*** described in [a specification embodiment] and may further include additional steps ***as may be obvious to one of ordinarily skilled in the art***." *Id.* at 11:23–29.

Thus, the Representative Claim does not recite an inventive concept.

### C.  Claim 1 Of The '411 Patent Is Representative Of All Claims And Nothing In The Remaining Claims Imparts Patentability

"Limiting the analysis of a § 101 challenge to representative claims is proper when the claims at issue are 'substantially similar and linked to the same' ineligible concept." *Mobile Acuity Ltd. v. Blippar Ltd.*, 110 F.4th 1280, 1290 (Fed. Cir. 2024) (citations omitted). Once a patent challenger "identifies a claim as representative of a group of claims" and "make[s] a prima facie showing that the group of claims are 'substantially similar and linked to the same' ineligible concept . . . the burden shifts to the patent owner to present non-frivolous arguments as to why the eligibility of the identified representative claim cannot fairly be treated as decisive of the eligibility of all claims in the group." *Id.* (citations omitted).

Claim 1 of the '411 Patent is representative of all claims of the Asserted Patents:

1.  A method comprising:

*sensing* by a smartphone, using a smartphone-based sensor, *physiological data* associated with a living organism;

*detecting that a proximity criterion is satisfied* between the smartphone and an entity, wherein the entity is not the living organism;

*selectively communicating* by the smartphone using a first air interface of a plurality of air interfaces with which the smartphone is capable of communicating, *responsive to the proximity criterion having been detected as being satisfied and responsive to a value of the physiological data* associated with a living organism that was sensed by the smartphone using the smartphone-based sensor;

*refraining from communicating* by the smartphone using the first air interface *absent said value of the physiological data* associated with a living organism that was sensed by the smartphone using the smartphone-based sensor *satisfying a criterion*, even though the proximity criterion is detected as being satisfied;

*selectively sending information* by the smartphone to one or more other devices *and receiving information* by the smartphone from the one or more other devices *responsive to said value of the physiological data* associated with a living organism that was sensed by the smartphone using the smartphone-based sensor *satisfying the criterion*; and

*communicating* by the smartphone using a second air interface of the plurality of air interfaces with which the smartphone is capable of communicating that differs from the first air interface.

Ex. A, claim 1 (the "Representative Claim").

Telcom's remaining claims—based on the same specification—are substantially similar. Each claim describes using a smartphone (if a device is even specified) and other conventional computer components and functionalities, and each is focused on: (1) determining whether certain criteria are met, such as whether physiological data is sensed, whether a "proximity criterion" is met between the smartphone and an entity, or whether other parameters are detected; and (2) controlling the transmission of data based on whether or not the criteria are met. *See* Exs. A–H. By way of example, attached Exhibit I annotates the substantial similarity between the Representative Claim and each independent method claim of the Asserted Patents. The remaining

independent claims are merely apparatus claim counterparts substantially similar to the method claims shown in Exhibit I.

While certain differences exist between Telcom's claims, those variations do not change the claims' "focus" for purposes of analyzing subject matter eligibility.  For example, the following claims specify that the data transmissions relate to performing financial transactions: '199 Patent, dependent claims 7–8 and 17–18; all claims of the '432 Patent; '756 Patent, dependent claims 3–5, 8–10, independent claims 11, 14 and their dependents; and all claims of the '743, '172, and '793 Patents.  *See* Exs. C–H.  But that "does little more than restrict the invention's field of use." *Intell. Ventures I LLC v. Cap. One Fin. Corp.*, 850 F.3d 1332, 1340 (Fed. Cir. 2017).  "Such limitations do not render an otherwise abstract concept any less abstract." *Id.* at 1259 (citations omitted).

Similarly, the claims provide minor variations on if or when physiological or proximity criteria are applicable, or recite the use of other user- or device-based parameters as criteria (such as a time-of-day).  For example, '411 Patent claims 2 and 4 and '708 Patent claims 1–5 and 9–19 use only a proximity criterion or recite distances for satisfying the proximity criterion.  *See* Exs. A–B.  The following claims use a broader set of parameters or use an "identity" parameter: '708 Patent, claims 6–8; '432 Patent, claim 4; and all claims of the '756, '743, and '172 Patents.  *See* Exs. B, D–G.  Similarly, the claims of the '793 Patent vary when the physiological and proximity criteria are satisfied.  *See* Ex. H.  Varying the "particular content" of information, however, "does not change its character as information" collected.  *See Elec. Power Grp.*, 830 F.3d at 1353.  The focus of those variations is still on "collecting information, analyzing it, and [providing] certain results of the collection and analysis"—*i.e.*, receiving information and conditionally allowing or disallowing communication in response.  *Elec. Power Grp.*, 830 F.3d at 1353.

Further, the claims of the '432, '756, '743, '172, and '793 Patents articulate controlling

18

whether to transmit data in terms of enabling or disabling generic "modes," "functions," or "capabilities." *See* Exs. D–H.  Other distinctions among the claims involve adding on or swapping in generic computer components and conventional computer activities.  For example, the claims of the '708, '199, '432, '743, '172, and '793 Patents and claims 17–18 of the '756 Patent recite use of conventional and generic communication capabilities, services, or components such as base stations, wireless networks, short-range links and signals, and licensed/unlicensed frequencies. *See* Exs. B–H.  Similarly, the following claims specify use of conventional communication protocols such as Time Division Duplex, Orthogonal Frequency Division, and WiFi protocols: '708 Patent, claim 5, 15, 16 and its dependent; '199 Patent, claims 3, 13; '432 Patent, claim 9; '756 Patent, claims 17–18; all claims of the '743 Patent; '172 Patent, claims 6, 8, 14, 16; and '793 Patent, claims 4, 7–11.  *See* Exs. B–H.  But "[a]n abstract idea does not become nonabstract by limiting the invention to a particular field of use or technological environment." *Cap. One Bank*, 792 F.3d at 1366; *see, e.g.*, *Cap. One Fin. Corp.*, 850 F.3d at 1340 (same); *buySAFE, Inc. v. Google, Inc.*, 765 F.3d 1350, 1355 (Fed. Cir. 2014) (same).  "Nothing in the claims, understood in light of the specification, requires anything other than off-the-shelf, conventional computer [and] network [] technology" for controlling whether to transmit data, meaning none of the claims stand meaningfully apart from the Representative Claim for purposes of Section 101 analysis. *Elec. Power Grp.*, 830 F.3d at 1354; *see also* Section IV.B above (discussing Asserted Patents' common specification).

Accordingly, Telcom's claims are substantially similar and linked to the same ineligible concept and should "fall together" with the Representative Claim. *See Accenture Global Servs., GmbH v. Guidewire Software, Inc.*, 728 F.3d 1336, 1344 (Fed. Cir. 2013) (finding claims that had "'minor differences in terminology [but] require[d] performance of the same basic process' . . .

should rise or fall together").

## V.    CONCLUSION

All claims of Telcom's Asserted Patents are directed to the abstract idea of controlling whether to transmit data based on collecting and assessing information as criteria, which fails *Alice* Step One.  The claims invoke only generic or conventional computing components and functions for implementing that abstract idea, which fails *Alice* Step Two.  Accordingly, the claims of Telcom's Asserted Patents are invalid under Section 101.  Thus, Apple respectfully requests that the Court dismiss all of Telcom's claims with prejudice.

Dated: November 27, 2024

Respectfully Submitted,

By: */s/ Martin B. Goldberg*

Martin B. Goldberg
Florida Bar No. 0827029
Email: mgoldberg@lashgoldberg.com
Lynnette Cortes Mhatre
Florida Bar No. 1052015
Email: lmhatre@lashgoldberg.com
**LASHGOLDBERG**
Lash Goldberg Fineberg LLP
Miami Tower, Suite 1200
100 S.E. 2nd Street
Miami, FL 33131
Tel: (305) 347-4040
Fax: (305) 347-4050

John M. Desmarais (*pro hac vice* pending)
Email: jdesmarais@desmaraisllp.com
Cosmin Maier (*pro hac vice* pending)
Email: cmaier@desmaraisllp.com
Lindsey Miller (*pro hac vice* pending)
Email: lmiller@desmaraisllp.com
**DESMARAIS LLP**
230 Park Avenue
New York, NY 10169
Tel: (212) 351-3400

Peter C. Magic (*pro hac vice* pending)
Email: pmagic@desmaraisllp.com
**DESMARAIS LLP**
101 California Street
Francisco, CA 94111
Tel: (415) 573-1900

*Attorneys for Defendant Apple Inc.*