**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 24-23837-CIV-MARTINEZ-SANCHEZ**

TELCOM VENTURES LLC,

                Plaintiff,

      v.

APPLE INC.,

            Defendant.

**DEFENDANT APPLE INC.'S MOTION TO TRANSFER VENUE**
**TO THE NORTHERN DISTRICT OF CALIFORNIA UNDER 28 U.S.C. § 1404(A)**

**TABLE OF CONTENTS**

**Pages**

I.      INTRODUCTION..................................................................................................1

II.     FACTUAL BACKGROUND ................................................................................2

        A.    Apple's Most Relevant Witnesses And Documents Are Predominantly
              Located At Or Far Nearer To Apple's Cupertino Headquarters In
              California. ........................................................................................................3

        B.    Telcom Has Limited (If Any) Current Connections To This District. ...................5

III.    LEGAL STANDARDS ........................................................................................6

IV.     ARGUMENT .......................................................................................................7

        A.    This Case Could Have Been Brought In The Northern District Of
              California. ........................................................................................................7

        B.    The Private Interest Factors Strongly Favor Transfer to the Northern
              District of California. .......................................................................................8

              1.    The Witness and Party Convenience Factors Favor Transfer.................... 8

              2.    The Location of Documents and Ease of Access to Sources of
                    Proof Favors Transfer. ............................................................... 11

              3.    The "Locus of Operative Facts" Factor Favors Transfer. .......................... 13

              4.    The Availability of Compulsory Process Favors Transfer. ...................... 14

              5.    The Relative Means of the Parties is Neutral............................................ 15

        C.    The Public Interest Factors Favor Transfer To The Northern District Of
              California. ........................................................................................................15

              1.    The Court Congestion Factor Favors Transfer. ....................................... 16

              2.    The Local Interest Factor Favors Transfer................................................ 17

              3.    The Remaining Public Interest Factors are Neutral.................................. 18

CONCLUSION ................................................................................................................19

## **TABLE OF AUTHORITIES**

**Cases**

*Advanced Aerodynamics, LLC v. Unmanned Cowboys, LLC,*
 Case No. 0:15-cv-62679, 2016 WL 8738383 (S.D. Fla. May 31, 2016) ................... 14, 17

*Carucel Investments, L.P. v. Novatel Wireless, Inc.,*
 157 F. Supp. 3d 1219 (S.D. Fla. Jan. 19, 2016) ...................................................... passim

*CoachComm, LLC v. Westcome Wireless, Inc.,*
 Case No. 21-cv-743, 2023 WL 3218500 (M.D. Ala. May 2, 2023) ............................... 15

*David's Dozer V-Loc System Inc., v. Deere & Company,*
 Case No. 23-24931-CIV, 2024 WL 5102001 (S.D. Fla. May 30, 2024)
 *mandamus denied, In re David's Dozer V-Loc Sys. Inc.,* No. 2024-135, 2024 WL
 4143547 (Fed. Cir. Sept. 11, 2024) .................................................................. 11, 15, 19

*Exum v. Nat'l Tire & Battery,*
 2020 WL 5506489 (S.D. Fla. Sept. 14, 2020) .............................................................. 17

*Freedom Watch Inc. v. Judicial Watch, Inc.,*
 289 F. Supp. 3d 1270 (S.D. Fla. 2018) .......................................................................... 6

*Frey v. Minter,*
 829 F. App'x 432 (11th Cir. 2020) .............................................................................. 1, 6

*Game Controller Tech. LLC v. Sony Computer Ent. Am. LLC,*
 994 F. Supp. 2d 1268 (S.D. Fla. 2014) ....................................................................... 7, 14

*In re Apple Inc.,*
 Case No. 2021-181, 2021 WL 5291804 (Fed. Cir. Nov. 15, 2021) ............................... 12

*In re Apple Inc.,*
 979 F.3d 1332 (Fed. Cir. 2020) .............................................................................. 12, 18

*In re Apple Inc.,*
 Case No. 2021-181, 2021 WL 5291804 (Fed. Cir. Nov. 15, 2021) ..................... 12, 18, 19

*In re BigCommerce, Inc.,*
 890 F.3d 978 (Fed. Cir. 2018) ...................................................................................... 8

*In re Genentech, Inc.,*
 566 F.3d 1338 (Fed. Cir. 2009) .............................................................................. 11, 15

*In re Haptic, Inc.,*
 Case No. 2024-121, 2024 WL 3159288 (Fed. Cir. June 25, 2024) ................................ 12

## TABLE OF AUTHORITIES (cont'd)

**Pages**

*In re Juniper Networks, Inc.*,
    14 F.4th 1313 (Fed. Cir. 2021) .......................................................................... 17

*In re Juniper Networks, Inc.*,
    Case No. 2021-156, 2021 WL 4519889 (Fed. Cir. Oct. 4, 2021) ....................................... 1

*In re Samsung Elecs. Co., Ltd.*,
    2 F.4th 1371 (Fed. Cir. 2021) ............................................................................ 18

*In re TS Tech USA Corp.*,
    551 F.3d 1315 (Fed. Cir. 2008) .......................................................................... 14

*Manuel v. Convergys Corp.*,
    430 F.3d 1132 (11th Cir. 2005) ........................................................................... 6

*MindbaseHQ LLC v. Google LLC*,
    Case No. 20-CV-24742, 2021 WL 1923142 (S.D. Fla. May 13, 2021) .................. passim

*Morrissey v. Subaru of Am., Inc.*,
    2015 WL 9583278 (S.D. Fla. Dec. 31, 2015) ..................................................... 17

*Motorola Mobility, Inc. v. Microsoft Corp.*,
    804 F. Supp. 2d 1271 (S.D. Fla. 2011) ..................................................... 7, 8, 14

*Piper Aircraft Co. v. Reyno*,
    454 U.S. 235 (1981) ........................................................................................ 16

*Rothschild Storage Retrieval Innovations, LLC v. Sony Mobile Commc'ns (USA) Inc.*,
    Case No. 14-CIV-22652, 2015 WL 224952 (S.D. Fla. Jan. 15, 2015) ............ 9, 10, 16, 19

*ShadeFX Canopies, Inc. v. Country Lane Gazebos, LLC*,
    Case No. 13- 80239-CIV, 2013 WL 9827411 (S.D. Fla. June 14, 2013) ................. 16, 19

*Stat Med. Devices, Inc. v. Intrinsyk, LLC*,
    Case No. 15-20071-CIV, 2015 WL 10960945 (S.D. Fla. Dec. 1, 2015) .......................... 7

*TC Heartland LLC v. Kraft Foods Group Brands LLC*,
    581 U.S. 258 (2017) ......................................................................................... 8

*Trace-Wilco, Inc. v. Symantec Corp.*,
    Case No. 08-80877-CIV, 2009 WL 455432 (S.D. Fla. Feb. 23, 2009) ................... passim

*United States, ex rel Florida v. ApolloMD Inc.*,
    2020 WL 10181736 (S.D. Fla. Aug. 3, 2020) ..................................................... 17

**Statutes**

28 U.S.C. § 1404 ..................................................................................................... 1, 5

**TABLE OF AUTHORITIES (cont'd)**

<u>**Pages**</u>

35 U.S.C. § 1400.................................................................................................................. 7

## I.    INTRODUCTION

This case centers on technology that Apple engineers designed and developed primarily at Apple's global headquarters in Cupertino, California.  Because "the center of gravity of this action is clearly in" the Northern District of California—and not in Florida—Apple respectfully submits that this case should be transferred under 28 U.S.C. § 1404(a) for the convenience of the parties and of the overwhelming majority of relevant witnesses.  *In re Juniper Networks, Inc.*, No. 2021-156, 2021 WL 4519889, at *3 (Fed. Cir. Oct. 4, 2021) (granting mandamus petition to transfer case).  In particular, the vast majority of relevant witnesses, custodians, and records related to the accused Apple Pay features are located at or near Apple's Cupertino headquarters.  In contrast, the only connection the case appears to have to this District is Plaintiff Telcom's now-dissolved status as a limited liability company organized under Florida law.  Given those facts, nearly all of the "private" and "public" interest factors that courts consider when deciding transfer motions favor granting this motion.  *See Frey v. Minter*, 829 F. App'x 432, 436 (11th Cir. 2020) (listing "private" and "public" interest factors that courts in this District consider when deciding transfer motions).

Five of the six private interest factors favor transfer.  The first and third factors—the convenience of witnesses and of the parties—strongly favor transfer to the Northern District of California because nearly all of the most relevant witnesses live and work in or near Cupertino, CA—the home of Apple's global headquarters.  The second factor—the location of relevant documents—favors transfer because, much like Apple's relevant witnesses, Apple's most relevant documents concerning the accused functionality are stored or accessible in or near Cupertino and not in Florida.  The fourth factor—the locus of operative facts—favors transfer because the research, design, development, marketing, financial accounting, and licensing of the products Telcom accuses of infringement is all managed from Apple's Cupertino headquarters.  And the fifth factor—compulsory process—favors transfer because the Northern District of California has

1

subpoena power over far more potential witnesses with relevant knowledge than this District. The last factor—the relative means of the parties—is neutral where, as here, both parties are corporations.

The five public interest factors similarly favor transfer because two of those factors favor transfer and the other three are neutral. The first factor—court congestion—favors transfer because the Southern District of Florida is heavily congested and need not hold onto a case in which most of the relevant witnesses and documents are located in California. The second factor—the local interest in adjudicating the dispute—strongly favors transfer to the Northern District of California because that is where the vast majority of relevant witnesses live and work, including the teams responsible for the relevant features of the accused products. None of those people live or work in Florida. The remaining three factors are neutral because both districts are familiar with patent law, there are no governing law or conflict of law issues that weigh against transfer, and the burden of transfer on California citizens is minor, given the large local interest in this case.

In sum, the Northern District of California is the center of gravity for the people and information relevant to the allegations in this case, making it a far more convenient venue as compared to this District. Therefore, Apple respectfully requests that the Court transfer this case.

## II.    FACTUAL BACKGROUND

This is an action for alleged patent infringement. Telcom alleges that Apple infringes U.S. Patent Nos. 9,462,411; 9,832,708; 10,219,199; 10,674,432; 11,770,756; 11,924,743; 11,937,172; and 12,028,793 (collectively, the "Asserted Patents"). Dkt. 1 (Complaint) ¶ 2. At a high level, the Asserted Patents are generally directed to enabling or disabling communications based on certain criteria being satisfied, such as a proximity between a phone and another device and/or sensing certain physiological data, to perform a financial transaction. *See, e.g.*, Complaint Ex. 1 ('411 Patent) at Abstract. Telcom accuses Apple iPhones with Apple Pay (the "Accused Products") of

infringing the Asserted Patents. *E.g.*, Complaint ¶¶ 53–60, 64. Specifically, Telcom accuses features such as adding a credit card to Apple Wallet for use in Apple Pay, using near field communication with Apple Pay, and using Face ID or Touch ID in conjunction with Apple Pay. Complaint Exs. 9–16. All of those features were developed primarily at Apple's Cupertino headquarters.

### A. Apple's Most Relevant Witnesses And Documents Are Predominantly Located At Or Far Nearer To Apple's Cupertino Headquarters In California.

Apple is a California corporation. *See* Ex. 1 at 1. Apple has been headquartered in the Northern District of California ("NDCA") for nearly 50 years and employs more than 35,000 people in California. Ex. 2 at 1. Among Apple's NDCA employees are those involved in the research, design, development, testing, marketing, financial accounting, and licensing of the products that Telcom accuses of infringement. To supply facts for this motion, Apple submits declarations from its employees who have responsibility over the subject matter implicated by Telcom's allegations—*all* of whom live and work in California. Indeed, those declarants know of no Apple employee with relevant knowledge nor any relevant document located in this District.

In particular, research, design, development, and testing related to the Accused Products in the United States took place (and continues to take place) in the Cupertino area, where the majority of relevant employees are located. Regarding those topics, Apple submits the declarations of Mr. Glen Steele, Mr. Palash Bandyophadhay, and Mr. Gianpaolo Fasoli.

Mr. Steele is a Software Engineering Applications Director in the Wallet Apps and Frameworks group. Steele Decl. ¶ 1. Apple's Wallet Apps and Frameworks group is responsible for the user interface of Apple Pay, including the user interface processes involved in adding credit cards to Apple Wallet in the Accused Products. *Id.* ¶ 3. Mr. Steele and his two team members who are most directly involved in the functionality for adding cards to Apple Wallet are located in

Cupertino.  *Id*. ¶¶ 1, 3, 4.

Mr. Bandyophadhay is a Software Development Engineer in the Telephony, eSim, NFC and SE group.  Bandyophadhay Decl. ¶ 1.  Apple's Telephony, eSim, NFC and SE group is responsible for NFC wireless data transfer, including using NFC wireless data transfer in connection with Apple Pay in the Accused Products.  *Id*. ¶¶ 1, 3. Mr. Bandyophadhay is based in San Diego, California—far closer to Cupertino than to Miami—and his team is located in Cupertino (five people), San Diego (one person), and Montreal, Canada (one person).  *Id*. ¶¶ 1, 4.

Mr. Fasoli is a Director of Engineering in the Apple Pay Security group.  The Apple Pay Security group is responsible for analyzing and evaluating the security assurances in Apple devices that transact payments via Apple Pay and Apple Wallet, including biometric security functionality involved with a user's authentication for the purposes of making an Apple Pay payment via the Accused Products.  Fasoli Decl. ¶ 3.  Mr. Fasoli is based in Cupertino and his team members are based in the San Francisco Bay Area (seven people) and United Kingdom (two people).  *Id*. ¶¶ 1, 4.

The marketing, finance, and licensing activity related to the Accused Products in the United States likewise took place and continues to take place in California, where the majority of relevant employees are located.  On those topics, Apple submits the declarations of Mr. Manan Biyani, Ms. Catherine Spevak, and Mr. Matt Clements.

Mr. Biyani is a Marketing Director in the Wallet Payments and Commerce Marketing group.  Mr. Biyani is knowledgeable about Apple's marketing strategies for Apple Pay and Apple Wallet.  Biyani Decl. ¶ 3.  Mr. Biyani and the Wallet Payments and Commerce Marketing group are based in Cupertino, with seven employees located there, two in New York City, and one in Raleigh, North Carolina.  *Id*. ¶¶ 1, 4.

Ms. Spevak is a Finance Manager in Apple's Central Finance team.  Ms. Spevak is knowledgeable about Apple's sales and financial information related to the Accused Products. Spevak Decl. ¶ 5.  The Central Finance team's three members are all based in Cupertino.  *Id*. ¶¶ 1, 4.

Mr. Clements is a Senior Legal Counsel on the IP Transactions team.  Mr. Clements is knowledgeable about Apple's patent licensing practices.  Clements Decl. ¶ 4.  The IP Transactions team's 10 members are all based in Cupertino.  *Id*. ¶¶ 1, 4.

Much like Apple's knowledgeable employees, Apple's records related to the Accused Products are located on employee work computers in the Northern District of California in locally saved and shared locations.  Steele Decl. ¶ 5; Bandyophadhay Decl. ¶ 5; Fasoli Decl. ¶ 5, Biyani Decl. ¶ 5; Clements Decl. ¶ 5; Spevak Decl. ¶¶ 5, 6.

## B.  Telcom Has Limited (If Any) Current Connections To This District.

Telcom Ventures LLC pleads that it is a "limited liability company organized and existing under the laws of the State of Florida."  Complaint ¶ 5.  But although a "Telcom Ventures LLC" was formed in Florida in June 2006, the Florida Department of State now lists its status as "inactive" after an "admin dissolution."  Ex. 3.  In 2008, a Delaware entity named "Telcom Ventures (Delaware), LLC" was registered in Florida, listing the "Cross Reference Name" of "Telcom Ventures, LLC."  Ex. 4.  Delaware records show that "Telcom Ventures, LLC" was formed in Delaware in 1993 and a 2007 resolution "RESOLVED that the Company shall adopt the name Telcom Ventures (Delaware) LLC as a fictitious name in the State of Florida."  Ex. 5. Thus, no active limited liability company organized and existing under the laws of the State of Florida named Telcom Ventures LLC appears to exist.

The Asserted Patents each name Peter D. Karabinis and Rajendra Singh as inventors.  The Asserted Patents identify Mr. Karabinis as a resident of Reston, Virginia and Cary, North Carolina

and Mr. Singh as a resident of Indian Creek Village, Florida.  Complaint Exs. 1–8.  Both "Telcom

Ventures LLC" and "Telcom Ventures (Delaware), LLC" identify Mr. Singh as a manager.  Exs.

3, 4.

## III.   LEGAL STANDARDS

"For the convenience of parties and witnesses, in the interest of justice, a district court may

transfer any civil action to any other district or division where it might have been brought."  28

U.S.C. § 1404(a).  Analysis under 1404(a) begins with the threshold question of "whether the case

might have been brought in the transferee court." *Freedom Watch Inc. v. Judicial Watch, Inc.*, 289

F. Supp. 3d 1270, 1273 (S.D. Fla. 2018) (citing 28 U.S.C. § 1404(a)).   If the answer to that

threshold question is yes, courts weigh several private interest and public interest factors to

determine "whether convenience and the interest of justice require transfer to the requested

forum." *Carucel Investments, L.P. v. Novatel Wireless, Inc.*, 157 F. Supp. 3d 1219, 1223 (S.D.

Fla. Jan. 19, 2016).  These "numerous factors" include: "(1) the convenience of the witnesses; (2)

the location of relevant documents and the relative ease of access to sources of proof; (3) the

convenience of the parties; (4) the locus of operative facts; (5) the availability of process to compel

the attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's

familiarity with the governing law; (8) the weight accorded a plaintiff's choice of forum; and (9)

trial efficiency and the interests of justice, based on the totality of the circumstances." *Frey v.

Minter*, 829 F. App'x 432, 436 (11th Cir. 2020) (quoting *Manuel v. Convergys Corp.*, 430 F.3d

1132, 1135 (11th Cir. 2005)).

Courts in this District place special emphasis in the transfer analysis on where the "center

of gravity of the alleged infringement occurred." *Trace-Wilco, Inc. v. Symantec Corp.*, No. 08-

80877-CIV, 2009 WL 455432, at *3 (S.D. Fla. Feb. 23, 2009).  "[D]istrict courts often grant

motions to transfer venue in patent infringement cases when the plaintiff has chosen a forum that

is not the 'center of gravity of the accused activity.'" *MindbaseHQ LLC v. Google LLC*, No. 20-CV-24742, 2021 WL 1923142, at *3 (S.D. Fla. May 13, 2021) (quoting *Trace-Wilco*, 2009 WL 455432, at *2-3).  For patent infringement cases, the center of gravity is the jurisdiction "where the accused product was designed and developed." *Motorola Mobility, Inc. v. Microsoft Corp*., 804 F. Supp. 2d 1271, 1276 (S.D. Fla. 2011) (quoting *Trace-Wilco*, 2009 WL 455432, at *2-3). "[T]he location of the alleged infringer's principal place of business is often the critical and controlling consideration in adjudicating transfer of venue motions." *Trace-Wilco*, 2009 WL 455432, at *3 (citations omitted).  Because the facts that underpin the center of gravity analysis overlap with the private interest factors, courts in this District often analyze the center of gravity within that context. *See, e.g., Game Controller Tech. LLC v. Sony Computer Ent. Am. LLC*, 994 F. Supp. 2d 1268, 1275 (S.D. Fla. 2014) (analyzing the center of gravity as part of the "locus of operative facts" private interest factor); *Stat Med. Devices, Inc. v. Intrinsyk, LLC*, No. 15-20071-CIV, 2015 WL 10960945, at *6 (S.D. Fla. Dec. 1, 2015) (same).

## IV.    ARGUMENT

This case should be transferred to the Northern District of California because it is the clearly more convenient venue.  There can be no dispute that this case could have been brought in the Northern District of California because Apple is incorporated in California and its global headquarters is located in Cupertino (within NDCA).  And the private and public interest factors strongly favor transfer to the Northern District of California because the vast majority of potential witnesses and evidence are found there.

### A.    This Case Could Have Been Brought In The Northern District Of California.

A patent infringement case "may be brought in the judicial district where the defendant resides[.]" 35 U.S.C. § 1400(b).  A corporate defendant "resides" in its state of incorporation. *TC Heartland LLC v. Kraft Foods Group Brands LLC*, 581 U.S. 258, 262 (2017).  Thus, this case

could have been brought in the Northern District of California because Apple is incorporated in California. Ex. 1 at 1; *see* Complaint ¶ 7. A corporation also resides where its headquarters are located, and Apple's headquarters is in Cupertino, CA. *In re BigCommerce, Inc.*, 890 F.3d 978, 985 (Fed. Cir. 2018).

**B.    The Private Interest Factors Strongly Favor Transfer to the Northern District of California.**

The six private interest factors are: "(1) the convenience of the witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; [and] (6) the relative means of the parties." *Carucel Invs.*, 157 F. Supp. 3d at 1224 (quoting *Motorola Mobility*, 804 F.Supp.2d at 1275–76). Factors one through five strongly favor transfer to the Northern District of California, and the sixth factor is neutral.

**1.    The Witness and Party Convenience Factors Favor Transfer.**

The first and third factors—witness and party convenience—overlap and are addressed together. Both strongly favor transfer because the vast majority of potential witnesses are in or far nearer to Cupertino, California, making NDCA the clearly more convenient venue for witnesses and the parties.

First, witness convenience strongly favors transfer because the overwhelming majority of material witnesses live and work in the Northern District of California. Apple's most relevant potential witnesses and teams are predominantly located in the San Francisco Bay Area. The Apple Pay Security group sub-team who work on the use of biometric authentication for Apple Pay has nine members, seven of whom are located in the San Francisco Bay Area and two of whom are located in the United Kingdom. Fasoli Decl. ¶ 4. The Wallet Apps and Frameworks sub-team who work on adding credit cards to Apple Wallet has two members, both located in Cupertino.

Steele Decl. ¶ 4.  The Telephony, eSim, NFC and SE group has eight members: five in Cupertino, two in San Diego, California, and one in Montreal, Canada.  Bandyopadhyay Decl. ¶ 4.  The Wallet Payments and Commerce Marketing group has ten members: seven in Cupertino, two in New York City, and one in Raleigh, North Carolina.  Biyani Decl. ¶ 4.  The IP Transactions team has ten members, all located in or around Cupertino.  Clements Decl. ¶ 5.  And Apple's Central Finance team has three members, all located in Cupertino.  Spevak Decl. ¶ 4.  In total, those teams comprise over 30 individuals in the Northern District of California, very few outside of that area, and ***none*** in Florida.

Telcom's Complaint does not identify any Telcom employee relevant to this suit, nor does it allege that it employs anyone in Florida or manufactures any products in Florida (or anywhere else).  The Asserted Patents identify named inventor Rajendra Singh as located in Indian Creek Village, Florida and the other named inventor, Peter Karabinis, as located in Reston, Virginia and Cary, North Carolina.  Although Mr. Singh may ostensibly be a manager of Telcom (see Exs. 3, 4), a single person residing in Florida is vastly outnumbered by the number of likely relevant witnesses from Apple in the Northern District of California.  *See Rothschild Storage Retrieval Innovations, LLC v. Sony Mobile Commc'ns (USA) Inc*., No. 14-CIV-22652, 2015 WL 224952, at *4 (S.D. Fla. Jan. 15, 2015) (granting transfer despite the "presence in the current forum" of plaintiff's corporate executive and inventor because "[t]he individuals responsible for the development and creation of the Accused Products, and, therefore, those with the most knowledge of the allegedly infringing functionalities, reside in Northern California").

Thus, the vast majority of potentially relevant witnesses are in the Northern District of California, making that district far more convenient for witnesses than the Southern District of Florida.  Apple's headquarters in Cupertino is a short distance from each of the three Northern

District of California courthouses.[1]  In contrast, trial in the Southern District of Florida would require each of Apple's witnesses to fly to Florida and stay in a hotel.  Thus, the Northern District of California is clearly more convenient for Apple's relevant employees, who comprise the vast majority of relevant witnesses in this case.  *See MindbaseHQ*, 2021 WL 1923142, at *5 (granting motion to transfer and noting "it would be overly burdensome to require each of the California-based witnesses to travel thousands of miles to this District"); *Rothschild*, 2015 WL 224952, at *5 (finding this factor weighed in favor of transfer where "a substantial portion of defendant's witnesses were located in the Northern District of California"); *Trace-Wilco*, 2009 WL 455432, at *3 (granting motion to transfer in part because "more witnesses will be inconvenienced by conducting this litigation in Florida than would be if the case is tried in northern California").

Second, the party convenience factor favors transfer for the same reasons as the witness convenience factor—far more potentially relevant party employees reside in California and thus would have to travel much less distance for a case in the Northern District of California than a case in the Southern District of Florida.  *See Trace-Wilco*, 2009 WL 455432, at *3 (finding convenience-of-parties factor favored transfer where "either side would be inconvenienced by the action being held in the forum preferred by the opposing party," but that "Plaintiff would be less disadvantaged than Defendant" because "Plaintiff has at most only two employees who might have to travel for this case").

In sum, NDCA is the clearly more convenient venue because the location of most of the potentially material witnesses—those responsible for the relevant engineering, marketing, finance, and licensing functions relating to the subject matter of this case—are in or far nearer to Apple's

---

[1] Apple's headquarters is approximately 8.5 miles from the San Jose courthouse and approximately 50 miles from the San Francisco and Oakland courthouses.

Cupertino headquarters.   Courts in this District find such facts sufficient to show the factors regarding convenience of witnesses and parties support transfer.   *See David's Dozer V-Loc System Inc., v. Deere & Company*, No. 23-24931-CIV, 2024 WL 5102001, at *7 (S.D. Fla. May 30, 2024) (granting transfer where litigating in the transferee district is "significantly less burdensome to the witnesses with the most material testimony than is litigating in South Florida"), *mandamus denied*, *In re David's Dozer V-Loc Sys. Inc.*, No. 2024-135, 2024 WL 4143547 (Fed. Cir. Sept. 11, 2024).

**2.     The Location of Documents and Ease of Access to Sources of Proof Favors Transfer.**

The second factor—location of documents and ease of access to sources of proof—also strongly favors transfer.   "In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer."   *In re Genentech, Inc.,* 566 F.3d 1338, 1345 (Fed. Cir. 2009). As a result, "the place where the defendant's documents are kept weighs in favor of transfer to that location."   *Id*.   Here, that location is Cupertino in NDCA.

The overwhelming majority of Apple's sources of proof are in NDCA.   The Apple engineers who work on research, design, develop, and test the accused functionalities of the Accused Products maintain those documents—including Apple's highly sensitive source code that governs the operation of much of the accused functionality—in and around Apple's Cupertino headquarters in NDCA.   *See* Steele Decl. ¶ 5; Bandyophadhay Decl. ¶ 5; Fasoli Decl. ¶ 5. Similarly, the Apple employees who work on the marketing, finance, and licensing aspects of the accused functionalities of the Accused Products maintain those documents in and around Apple's Cupertino headquarters in NDCA.   Biyani Decl. ¶ 5; Clements Decl. ¶ 5; Spevak Decl. ¶¶ 5, 6. Accordingly, the "wealth of important information" in NDCA "turns this factor in favor of transfer."   *In re Apple Inc.*, 979 F.3d 1332, 1340 (Fed. Cir. 2020) ("Apple I") (issuing writ of mandamus and reversing denial of transfer in part because of the "significant amount of relevant

information in NDCA" including "Apple records relating to the research and design of the accused products, and marketing, sales, and financial information for the accused products").

The individuals with responsibility over the relevant domains relating to the Accused Products know of no relevant Apple evidence in this District.  Steele Decl. ¶ 5; Bandyophadhay Decl. ¶ 5; Fasoli Decl. ¶ 5; Biyani Decl. ¶ 5; Clements Decl. ¶ 5; Spevak Decl. ¶¶ 5, 6.  Under these circumstances, the sources-of-proof factor favors transfer.  *See*, *e.g.*, *In re Apple Inc.*, No. 2021-181, 2021 WL 5291804, at *2 (Fed. Cir. Nov. 15, 2021) ("Apple II") ("Apple's sworn declaration and deposition testimony make clear that essentially all of its source code and documentary evidence relevant to this action are maintained in [the Northern District of California]."); *Trace-Wilco*, 2009 WL 455432, at *4 (finding "this factor weighs in favor of transfer" where "[m]ost documents likely to be material to the prosecution of this patent infringement case appear to be located in the Northern District of California").

Moreover, relevant documents are not equally accessible in this District.  The documents of the relevant teams are access-restricted and predominantly accessible by employees located in the Northern District of California—and, critically, are not accessible by any Apple employees who happen to work in the Southern District of Florida.  Steele Decl. ¶ 5; Bandyophadhay Decl. ¶ 5; Fasoli Decl. ¶ 5; Biyani Decl. ¶ 5; Clements Decl. ¶¶ 5, 6; Spevak Decl. ¶¶ 5, 6; *In re Haptic, Inc.*, No. 2024-121, 2024 WL 3159288, at *1 (Fed. Cir. June 25, 2024) (denying mandamus petition to vacate transfer to the Northern District of California and finding "sources of proof are more easily accessible from NDCA than WDTX" where "Apple submitted sworn declarations attesting to the fact that such information was restricted on a need-to-know basis to Apple employees located in NDCA and areas outside WDTX").

Finally, the potential existence of any Telcom documents in Florida does not tip the scales

against transfer.  The relevant inquiry is where evidence regarding the Accused Products exists, not where the plaintiff resides or where the patents-in-suit were developed.  *See MindbaseHQ*, 2021 WL 1923142, at *4 ("Thus, the Court disagrees with Plaintiff's contention that the relevant center of gravity inquiry should focus on where the *patents-in-suit* were designed and developed.") (emphasis in original).

### 3.    The "Locus of Operative Facts" Factor Favors Transfer.

The fourth factor—the "locus of operative facts"—favors transfer because NDCA is where the Accused Products were designed and developed and where continuing work takes place. Apple's global headquarters is in NDCA.  *See* Ex. 1 at 1.  Apple conducts the majority of its research and development concerning the Accused Products in NDCA—including, critically, its work on the accused Apple Pay and Apple Wallet functionality.  *See supra* "Factual Background"; Steele Decl. ¶¶ 3, 4; Bandyophadhay Decl. ¶ 4; Fasoli Decl. ¶¶ 3, 4.  And Apple makes the majority of the decisions regarding engineering, marketing, finance, and licensing concerning the Accused Products in NDCA.  Steele Decl. ¶¶ 3, 4; Bandyophadhay Decl. ¶ 4; Fasoli Decl. ¶¶ 3, 4; Biyani Decl. ¶¶ 3, 4; Spevak Decl. ¶¶ 4, 5; Clements Decl. ¶ 4.  In contrast, no relevant work on the Accused Products occurs in this District.  Steele Decl. ¶¶ 4, 5; Bandyophadhay Decl. ¶¶ 4, 5; Fasoli Decl. ¶¶ 4, 5; Biyani Decl. ¶¶ 4, 5; Spevak Decl. ¶¶ 5, 6; Clements Decl. ¶¶ 4, 5.

Accordingly, because NDCA is where most of the relevant engineering, marketing, finance, and licensing work takes place, it is the locus of operative facts or "center of gravity" and therefore warrants transfer.  *See, e.g.*, *Trace-Wilco*, 2009 WL 455432, at *3 (granting transfer where "the center of gravity of the alleged infringement occurred in Northern California, where Defendant maintains its global headquarters, where the research and development of the allegedly infringing products occurred, and where the decisions regarding marketing and sales of the accused products were made"); *accord Motorola Mobility*, 804 F. Supp. 2d at 1276 ("[W]here the operative

facts underlying the cause of action did not occur within the forum chosen by the Plaintiff, the choice of forum is entitled to less consideration.").

To be sure, Apple sells the Accused Products nationwide, including in this District.  But mere sales of the Accused Products in the Southern District of Florida is insufficient to anchor the case in this District.  Where "the design, development, [and] production" of the Accused Products occurred in the transferee district, alleged "damage" from the purportedly infringing activities in the plaintiff's chosen forum "does not shift the locus of operative facts to [that forum]." *Advanced Aerodynamics, LLC v. Unmanned Cowboys, LLC*, No. 0:15-cv-62679, 2016 WL 8738383, at *5 (S.D. Fla. May 31, 2016).  "Such allegations concerning Defendants' sale of the Accused Products make this District no more unique than any other federal district, because the Accused Products are available nationwide." *Carucel Invs.*, 157 F. Supp. 3d at 1227; *see In re TS Tech USA Corp.*, 551 F.3d 1315, 1321 (Fed. Cir. 2008) (granting transfer and holding that nationwide sales gave the citizens of plaintiff's chosen forum "no more or less of a meaningful connection to this case than any other venue").  Thus, this factor favors transfer.

### 4.    The Availability of Compulsory Process Favors Transfer.

The fifth factor—the availability of compulsory process—favors transfer because NDCA has subpoena power over a far greater number of potentially relevant witnesses in this action, including the more than 30 NDCA-based Apple engineers and other employees mentioned above.  Other potentially relevant third-party witnesses, including named inventor Peter Karabinis— located in Virginia and North Carolina—are located outside of the Northern District of California ***and*** the Southern District of Florida, and therefore do not weigh in either direction for the transfer analysis.  Overall, this factor favors transfer.  *Cf. In re Genentech, Inc.*, 566 F.3d at 1345 (issuing writ of mandamus to transfer and noting this factor "weighs in favor of transfer" where "there is a substantial number of witnesses within the subpoena power of the Northern District of California

14

and no witness who can be compelled to appear in the Eastern District of Texas").

### 5. The Relative Means of the Parties is Neutral.

Finally, the sixth factor—the relative means of the parties—is neutral because when a plaintiff is "a corporate plaintiff, not an individual" the burden of transfer on the plaintiff is minimized. *Carucel Invs.,* 157 F. Supp. 3d at 1227–28 ("Although the Court is sympathetic to any potential additional cost to [Plaintiff], the Court is not persuaded that the monetary obligation or inconvenience to a corporate plaintiff, and/or its president, weighs in favor of denying transfer."); *see David's Dozer,* 2024 WL 5102001, at *7 (granting transfer and noting "[a]s a general rule, courts do not give the parties' relative means great weight when . . . both parties are corporations") (citing *CoachComm, LLC v. Westcome Wireless, Inc.*, No. 21-cv-743, 2023 WL 3218500, at *10 (M.D. Ala. May 2, 2023)); *MindbaseHQ*, 2021 WL 1923142, at *6 (rejecting that this factor weighs against transfer between two corporate entities, even when Defendant is "one of the largest publicly traded corporations ever to exist" and Plaintiff "is a small, two-member company").

*     *     *

In sum, because five of the six private interest factors strongly favor transfer and the remaining factor is neutral, the private interest factors strongly support transferring this case to the Northern District of California.

### C. The Public Interest Factors Favor Transfer To The Northern District Of California.

The public interest factors—"the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and the unfairness in burdening citizens in an unrelated forum with jury duty"—also favor transfer to the Northern

District of California because the first two factors favor transfer and the other three are neutral. *Trace-Wilco,* 2009 WL 455432, at *2 (quoting *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 241 n. 6 (1981)).

### 1.     The Court Congestion Factor Favors Transfer.

The first private factor—court congestion—considers the relative congestion of the transferee district in comparison to the plaintiff's chosen forum.  Courts weigh this factor lightly, if at all, given that it is "a 'minor consideration' when other factors would result in a transfer of venue."  *See, e.g., ShadeFX Canopies, Inc. v. Country Lane Gazebos, LLC*, No. 13-80239-CIV, 2013 WL 9827411, at *3 (S.D. Fla. June 14, 2013); *Trace-Wilco*, 2009 WL 455432, at *4 (same). Indeed, courts in this District have declined to address this factor where the transferee district is the center of gravity and has a substantial interest in adjudicating the case.  *See, e.g., Carucel Invs.*, 157 F. Supp. 3d at 1228–30 (declining to address this factor and noting that "transfer would serve the interests of justice where the center of the accused activity occurred in the transferee district"); *Rothschild Storage*, 2015 WL 224952, at *6 (granting transfer without addressing court congestion and finding the Northern District of California "is not only an appropriate forum, but significantly more appropriate given the fact that the core of activity surrounding the design, development, and production of the Accused Products occurred there").

But even considering this factor, transfer to the Northern District of California would help relieve congestion in this District, which has "one of the busiest dockets in the country."  *United States, ex rel Florida v. ApolloMD Inc*., 2020 WL 10181736, at *8 (S.D. Fla. Aug. 3, 2020); *see Exum v. Nat'l Tire & Battery*, 2020 WL 5506489, at *1 (S.D. Fla. Sept. 14, 2020) (recognizing that the Southern District of Florida maintains an "already overburdened docket").  In particular, the Southern District of Florida has a greater number of pending criminal cases than the Northern District of California, which take priority with judicial resources.  U.S. COURTS, FEDERAL JUDICIAL

CASELOAD STATISTICS 2024 TABLES, https://www.uscourts.gov/statistics-reports/caseload-statistics-data-tables. As such, "transfer would benefit the congestion in this District and the efficient resolution of this case." *United States ex rel. Fla. v. ApolloMD Inc*., 2020 WL 10181736 at \*8; *see Morrissey v. Subaru of Am., Inc.*, 2015 WL 9583278, at \*4 (S.D. Fla. Dec. 31, 2015) (granting transfer in part because "the Southern District of Florida has one of the busiest dockets in the county" and, as such, "[t]his district's case load favors transfer"); *Advanced Aerodynamics,* 2016 WL 8738383, at \*6 (granting transfer and noting that because this District is among the busiest in the nation, "[i]t will thus likely be less expensive and more efficient for the case to proceed in the transferee district").

### 2.    The Local Interest Factor Favors Transfer.

The second private factor—local interest—strongly favors transfer because the events giving rise to the alleged infringement occurred predominantly in the Northern District of California—and not in the Southern District of Florida. *See supra* "Factual Background" and IV.B.3 (locus of operative facts); *In re Juniper Networks, Inc.*, 14 F.4th 1313, 1319 (Fed. Cir. 2021) (issuing writ of mandamus and reversing denial of transfer where "events forming the basis for [Plaintiff's] infringement claims occurred mainly in the Northern District of California" as "[t]hat is sufficient to give the transferee venue a greater localized interest in the dispute, which favors transfer"); *Apple I*, 979 F.3d at 1345 (Fed. Cir. 2020) (issuing writ of mandamus and reversing denial of transfer, and explaining that "[t]his factor most notably regards not merely the parties' significant connections to each forum writ large, but rather the 'significant connections between a particular venue and the events that gave rise to a suit'") (citations omitted).

That local interest is especially substantial here, given the overwhelming imbalance in relevant witnesses and sources of proof in favor of the Northern District of California. *See* Steele Decl. ¶¶ 4, 5; Bandyophadhay Decl. ¶¶ 4, 5; Fasoli Decl. ¶¶ 4, 5; Biyani Decl. ¶¶ 4, 5; Spevak

Decl. ¶¶ 5, 6; Clements Decl. ¶¶ 4, 5.  And although Apple has locations in this District where employees perform work unrelated to the subject matter of this case, there can be no credible argument that Apple's relatively small and irrelevant presence here creates an equally substantial local interest—it does not.  No Apple employee who worked on the engineering, marketing, finances, or licensing of the Accused Products worked out of this District.  Steele Decl. ¶¶ 4, 5; Bandyophadhay Decl. ¶¶ 4, 5; Fasoli Decl. ¶¶ 4, 5; Biyani Decl. ¶¶ 4, 5; Spevak Decl. ¶¶ 5, 6; Clements Decl. ¶¶ 4, 5.  Apple's general presence in Miami does not bear on transfer here.  *See Apple II*, 2021 WL 5291804, at *5 (Fed. Cir. Nov. 15, 2021) ("We have repeatedly rejected that a party's 'general presence in a particular district' can alone 'give that district a special interest in the case.'").  Further, Telcom's conclusory allegations of Apple's infringing activities in the Southern District of Florida involving Apple Pay services offered nationwide and Telcom's lapsed incorporation in Florida do not "present circumstances in which Florida has a substantial interest." *See Carucel Invs.*, 157 F. Supp. 3d at 1229 (granting motion to transfer despite "Plaintiff's residency in the State of Florida"); *In re Samsung Elecs. Co., Ltd.*, 2 F.4th 1371, 1380 (Fed. Cir. 2021) (the mere "fact that infringement is alleged" where plaintiffs filed suit gives that venue "no more of a local interest than" any other venue, where the accused product is offered for sale nationwide).  "Because only the Northern District of California has significant connections to the events that gave rise to this suit, the local interest factor weighs strongly in favor of transfer." *Apple II*, 2021 WL 5291804, at *5 (Fed. Cir. Nov. 15, 2021).

### 3.    The Remaining Public Interest Factors are Neutral.

The remaining three public interest factors are neutral.  Federal jurisdiction in this case is conferred by the Patent Act, and "[a]ll federal courts are presumed to be equally familiar with patent law." *Carucel Invs.*, 157 F. Supp. 3d at 1229.  To the extent any issues of conflicts-of-laws or foreign law arise, either court is equally capable of resolving such issues.  Finally, "the burden

[of transfer] imposed upon the Northern District of California's citizens is light, given that California has a substantial interest in adjudicating controversies involving a corporation employing thousands of Californian residents." *MindbaseHQ*, 2021 WL 1923142, at *6.

*     *     *

In sum, the private and public factors strongly support transfer because the center of gravity of this case is in the Northern District of California—nearly all of the potentially relevant witnesses and documents are there. *See, e.g., David's Dozer*, 2024 WL 4143547, at *1 (no clear abuse of discretion in Southern District of Florida court's grant of transfer motion, where "other considerations outweigh[ed] Plaintiffs' choice to litigate at home"); *Carucel Investments*, 157 F. Supp. 3d at 1228–1229 (granting motion to transfer in part because transferee district was the "center of gravity" and therefore "significantly more appropriate given the fact that the core of activity surrounding the design, development, and production of the Accused Products occurred there"); *ShadeFX Canopies*, 2013 WL 9827411, at *3 (granting motion to transfer in part because the "center of the accused activity giving rise to this case occurred in [the transferee district]"); *Rothschild Storage*, 2015 WL 224952, at *5 (granting motion to transfer to the Northern District of California in part because the action's "center of gravity" was located there and "no aspect of the design or development of the Accused Products occurred in the Southern District of Florida"); *Trace-Wilco*, 2009 WL 455432, at *3 (granting motion to transfer to the Northern District of California in part because "the center of gravity of the alleged infringement occurred in northern California").

<u>**CONCLUSION**</u>

For the reasons set forth above, Apple respectfully requests that the Court grant Apple's motion and transfer this case to the Northern District of California.

19

## <u>LOCAL RULE 7.1(a) CERTIFICATE</u>
## <u>OF GOOD FAITH CONFERENCE</u>

Pursuant to Local Rule 7.1(a) of the U.S. District Court for the Southern District of Florida, counsel for the moving party has conferred with counsel for Plaintiff on February 5, 2025 in a good faith effort to resolve the issues raised in the motion.  Plaintiff's counsel opposes the requested relief.

## <u>REQUEST FOR HEARING</u>

Pursuant to Local Rule 7.1(b)(2), Apple Inc. respectfully requests a hearing on this motion. Apple believes that a hearing may be helpful in light of the number of factors relevant to this motion.  Apple requests 30 minutes per side for oral argument.

Dated: February 6, 2025

Respectfully submitted,

/s/ *Martin B. Goldberg*

Martin B. Goldberg
Florida Bar No. 0827029
Email: mgoldberg@lashgoldberg.com
Lynnette Cortes Mhatre
Florida Bar No. 1052015
Email: lmhatre@lashgoldberg.com
**LASH GOLDBERG FINEBERG LLP**
Miami Tower, Suite 1200
100 S.E. Second Street
Miami, Florida 33131
Tel: (305) 347-4040 | Fax: (305) 347-4050

Peter C. Magic (*pro hac vice*)
**DESMARAIS LLP**
101 California Street
San Francisco, CA 94111
Telephone: 415-573-1900
Facsimile: 415-573-1901
Email: pmagic@desmaraisllp.com

John M. Desmarais (*pro hac vice*)
Cosmin Maier (*pro hac vice*)
Lindsey Miller (*pro hac vice*)
**DESMARAIS LLP**
230 Park Avenue
New York, NY 10169
Telephone: 212-351-3400
Facsimile: 212-351-3401
Email: jdesmarais@desmaraisllp.com
Email: cmaier@desmaraisllp.com
Email: lmiller@desmaraillp.com

*Attorneys for Defendant Apple Inc.*

21