# EXHIBIT B

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| XR COMMUNICATIONS d/b/a VIVATO TECHNOLOGIES, *Plaintiff,* <br><br> v. <br><br> APPLE INC. *Defendant.* | § § § § § § § § § § | CIVIL NO. 6:21-CV-00620-ADA |

## DISCOVERY AND SCHEDULING ORDER

This Order hereby vacates its earlier Discovery and Scheduling Order, ECF No. 68, and substitutes this Discovery and Scheduling Order to set the more organized schedule attached in Appendix A used in other cases.

**A. General Organization of the Court's Default Schedule**

The Court's default schedule is generally organized into the following stages: pleadings, optional transfer briefing, initial contentions, early *Markman*, fact discovery, expert discovery, substantive motions, pretrial conference, and trial. *See, generally*, Standing Order Governing Proceedings in Patent Cases 4.1 ("OGP").

At the initial contentions stage, parties exchange their initial infringement and invalidity theories. Unlike many other courts, this Court holds and early *Markman* hearing and defers fact discovery until after the *Markman* hearing. OGP at 13. This Court does so to protect defendants from frivolous plaintiffs who seek settlements based not on merit but based on the burden of fact discovery, a tactic referred to "patent-trolling." Hence, the Court's default schedule defers fact discovery until after the *Markman* hearing so that parties can cost-effectively reach the first merit milestone in a case. *Greenthread, LLC v. Intel Corp.*, No. 6:22-CV-00105-ADA, 2022 WL 4004781, at *5 (W.D. Tex. Sept. 1, 2022).

1

After the *Markman* hearing, the default schedule provides for fact discovery, followed by expert discovery. After discovery, substantive motions are due. With few exceptions such as venue and jurisdictional motions, the Court hears and rules on all substantive, merit-based motions at the pretrial conference, which usually occurs about a week before trial. Statistically, the vast majority of cases will settle before the pretrial conference or trial. This procedure allows the Court to effectively manage its docket and avoid case congestion.

## B. History of the Court's Transfer Motion Procedures

On November 20, 2020, the Federal Circuit ruled that "a *Markman* hearing and claim construction order are two of the most important and time-intensive substantive tasks a district court undertakes in a patent case." *In re Apple Inc.*, 979 F.3d 1332, 1338 (Fed. Cir. Nov. 9, 2020). Less than three months later, the Federal Circuit ordered, "the district court must stay all proceedings concerning the substantive issues in the case until such time that it has issued a ruling on the transfer motion." *In re SK hynix Inc.*, 835 F. App'x 600, 601 (Fed. Cir. Feb. 1, 2021).

To comply, this Court immediately began delaying its *Markman* hearings until it issued orders on pending inter-district transfer motions. *See, e.g.*, Order Resetting Markman Hearing, *paSafeShare LLC v. Microsoft Corp.*, 6:20-cv-00397-ADA, (W.D. Tex. Feb. 9, 2021) ECF No. 40 (rescheduling *Markman* hearings in view of pending transfer motion). The OGP has a standing order to this effect. OGP at 5–6. The OGP also allowed for limited "venue discovery" before the *Markman* hearing. *Id.* at 5.

Parties then began abusing this process under an earlier version of the OGP. Defendants strategically waited to file their transfer motions to delay the case. After the permitted venue discovery, transfer motion briefing would not ripen by the *Markman* hearing, preventing this Court from issuing timely rulings. *See, e.g.,* Apple Inc.'s Status Report, *Scramoge Tech. Ltd. v. Apple*

2

*Inc.*, 6:21-cv-00579-ADA (W.D. Tex. Feb. 8, 2022) ECF No. 54 ("the motion will not be fully briefed and ready for resolution any earlier than March 14, 2022. The Markman hearing in this case is set for March 8, 2022"). This delay tactic employed by defendants forced the Court to unnecessarily reschedule the *Markman* hearings at the great inconvenience of all parties. To curb this abuse, the latest OGP requires transfer motions to be filed earlier and opens fact discovery after the originally scheduled *Markman* date, regardless of whether the *Markman* hearing is delayed. OGP at 6.

The venue dispute process should work as follows. So that this Court can prioritize transfer motions early in a case in accordance with the Federal Circuit's order, defendants may file a motion to transfer venue early in the case, along with evidence and declarations. OGP at 5–6; *In re SK hynix Inc.*, 835 F. App'x at 601. Venue discovery then automatically opens. OGP at 5. Plaintiffs will serve venue discovery requests and depose witnesses. Defendants provide the requested discovery. Then, plaintiffs file their opposition supported by evidence uncovered during venue discovery. Defendants then file their reply. This allows the Court to make a fair, evidence-based ruling. However, both plaintiffs and defendants have repeatedly frustrated the Court by failing to present the Court the evidence needed to make a fair ruling.

## C. The General Need for a Revised Schedule

A party may move to transfer a case for "the convenience of parties and witnesses, in the interest of justice." 28 U.S.C. § 1404. As part of this inquiry, Courts look to the locations of the parties, the witnesses, and the evidence, among other factors. *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1981)).

The Court intends to make a fair, evidenced-based ruling on Defendant's pending motion to transfer, ECF No. 22, based on an accurate identification of the witnesses, parties, and evidence

3

relevant to this case. Supplementing the record furthers this goal. In fairness, if one party raises new evidence or arguments in a motion, the Court will give the other party a fair opportunity to respond. Thus, the Court permits both parties to provide supplemental evidence and arguments. The Court will give Plaintiff an opportunity to investigate and respond to the new facts and arguments that Apple wishes to supplement.

Full fact discovery will allow the parties to provide the Court with the best evidence for ruling on a motion to transfer. In this Court's experience, speculation and incomplete discovery often plagues early transfer motions. Before fact discovery, parties have not yet identified the relevant prior art to assert at trial, the relevant witnesses, the relevant third parties, or the relevant evidence. Thus, in early motions to transfer, the *Volkswagen* factors drive parties to identify witnesses and evidence based on location rather than relevance. Too frequently, such transfer-driven speculation about the witnesses and evidence fails to align with reality. At trial, the parties end up calling different witnesses, asserting different prior art, and presenting different evidence from what they identify in their transfer briefs. Requiring venue discovery to precede fact discovery also frequently leads to unnecessary disputes about whether certain discovery requests fall into one bucket or the other. *See, e.g.,* Discovery Order, *LPP Combustion, LLC v. General Electric Co.*, 6:21-CV-1343-ADA-DTG (W.D. Tex. May 13, 2022) ECF No. 34 (ruling on venue discovery dispute). These types of disputes waste judicial resources—fact discovery will eventually open and parties will have to turn over the evidence anyway, so disputing about whether a request qualifies as "venue" discovery at most delays the production.

Indeed, the parties now present a needless venue discovery dispute to the Court regarding whether or not Apple adequately and timely disclosed its evidence and arguments or unfairly withheld them until after Plaintiff filed its opposition brief. ECF No. 55. Apple should have

4

provided all its venue evidence and arguments during venue discovery; this evidence that will come out during fact discovery anyway.

Thus, the Court finds it prudent to have the parties to re-brief the motion to transfer in accordance with the appended schedule after the parties conduct fact discovery and determine which witnesses and evidence they intend to call at trial. In other similarly situated cases, Apple has assured this Court that it would not oppose a continuance when Apple presented new evidence, and that a continuance would not affect the overall trajectory of this case because fact discovery would commence regardless of whether a continuance is or is not granted.

### D. Effects of the Revised Schedule

The scheduling order in Appendix A moves the completion of transfer motion briefing and the *Markman* hearing until after the conclusion of fact discovery so that the parties can fully uncover and identify all relevant parties and evidence instead of speculating about the same.

The parties are now required to narrow their asserted claims and prior art during the discovery period. By narrowing the asserted prior art, the parties can determine which, if any, prior art witnesses will actually attend trial rather than speculate about it. Defendants routinely repeatedly abused the transfer factors by serving "cherry picked" initial invalidity contentions happen to include a disproportionate amount of prior art listing inventors who reside in the destination venue. *See Fintiv, Inc. v. Apple Inc.*, No. 6:18-CV-00372-ADA, 2019 WL 4743678, at *5 (W.D. Tex. Sept. 13, 2019) ("Fintiv accuses Apple of 'cherry-picking' prior art witnesses"). The Federal Circuit found it error to disregard prior art witnesses, even though they are statistically unlikely to testify at trial. *In re Hulu, LLC*, No. 2021-142, 2021 WL 3278194, at *3 (Fed. Cir. Aug. 2, 2021). At this point, the Court is unable to peek into the future and accurately see which witnesses will attend trial. Thus, to stop such cherry-picking gamesmanship and to give the Court

5

the facts needed to make a fair ruling, the Court is deferring its decision on this factor until the parties have narrowed down their prior art contentions and identified the few prior artists who will actually testify at trial.

Based on the same reasoning, the revised schedule requires the parties to exchange preliminary witness lists at the close of discovery. The preliminary witness lists may be freely amended in good faith so long as the amendments do not amount to transfer motion gamesmanship. This benefits everyone by preventing the parties from speculating that certain witnesses have relevant information based on keywords in Linked-In profiles, news articles, third-party reports, and other possibly inaccurate hearsay.

Based on the same reasoning, the revised schedule requires the parties to exchange preliminary exhibit lists at the close of discovery. The preliminary exhibit lists may be freely amended in good faith so long as the amendments do not amount to transfer motion gamesmanship. This Court has been plagued by transfer motions where parties guess at the volume of evidence or fail to identify any evidence, preventing the Court from accurately determining which venue is most convenient. Instead, parties routinely suggest that any evidence will be found alongside custodians—thereby improperly double counting the location of witnesses in the transfer factors. Here, the parties are disputing whether Apple's manufacturer in Austin has the same quantity of evidence as ▓▓▓▓ in California. ECF No. 29 at 4. Proceeding to fact discovery and allowing the parties to serve their discovery requests will yield an accurate answer.

After the close of fact discovery, Plaintiff may file an opposition brief based on the facts uncovered during discovery. Then, Defendant can file its reply brief, also including any evidence uncovered during discovery. Plaintiff may then file a short sur-reply that responds to any new evidence or argument Defendant raises on reply.

6

With a better evidentiary record after full fact discovery, the Court will then rule on the transfer motion. Thereafter, the Court will hold the *Markman* hearing. As mandated by the Federal Circuit, the *Markman* hearing will occur after the Court issues its transfer opinion. *In re SK hynix Inc.*, 835 F. App'x at 601. Expert reports and substantive motions are not due until even later in the case. Per its usual practice, Court intends to hear and rule on any substantive motions at the pretrial conference that will not take place until about a week before trial.

The revised schedule has the unfortunate effect of delaying the *Markman* hearing, which prevents defendants from quickly reaching the first merit milestone in a patent case. But when a defendant files a motion to transfer knowing that the OGP automatically imposes the burden of venue discovery, the defendant values transfer more than cost-effectively reaching the *Markman* hearing as the Court originally intended.

### E. Historically, Apple has evaded venue discovery and supplied questionable evidence.

As a trial court, this Court handles many motions to transfer and is well-positioned to assess the comparable credibility of parties and their witnesses. The Court expects parties to respond fully to venue discovery requests and expects 30(b)(6) declarants to adequately investigate and prepare for their deposition topics. When the Court has all relevant facts and evidence, it can rule on a transfer motion. The Court compares the discovery and evidence provided by comparable high-tech defendants to show how forthcoming they appear:

Meta (formerly Facebook) has demonstrated exceptional candor before this Court. Meta routinely relies on declarations by Mr. Nicholas Wong to support transfer motions. This Court found "the Declaration of Nicholas Wong to be credible and convincing. Mr. Wong carefully investigated the underlying facts that form the basis of his knowledge, identified the basis of his knowledge, made mostly clear and unqualified statements of fact, made statements consistent with

7

Defendants' thoroughly prepared interrogatory responses, avoided making uninformed statements, avoided testifying about topics that he lacks knowledge of, and mostly avoids using vague and crafty language." *VoIP-Pal.com, Inc. v. Meta Platforms, Inc.*, No. 6:21-CV-00665-ADA, 2022 WL 2110696, at *3 (W.D. Tex. May 31, 2022) (hereinafter "Meta Case"). In support of its motion, Meta supplied the Court with an interrogatory response identifying the name, location, team name, and employment title of every employee in every group that the plaintiff contended was relevant to the case. Meta Case at ECF No. 40-11 (sealed interrogatory response). Whatever investigation Meta did, it was thorough—Meta found the relevant employees scattered in Texas, California, and in other states. Meta had nothing to hide, and no opposing evidence contradicted Meta's representations to this Court. This Court transferred the case based on Meta's candor and thorough discovery response. Meta Case at *3.

Google routinely relies on Mr. Rope as a venue declarant. In a recent case, he filed a declaration supporting a motion to transfer by Google, and the opposing party challenged Mr. Rope's credibility. *Motion Offense, LLC v. Google LLC*, No. 6:21-CV-00514-ADA, 2022 WL 3723303, at *2 (W.D. Tex. Aug. 29, 2022) (hereinafter "Google Case"). The Court found his declaration acceptable but limited to certain products and types of employees. *Id.* "He conducted a multi-day investigation, interviewed more than twenty individuals, and attempted to answer his deposition questions directly rather than evasively. Although Mr. Rope received some information from counsel and routinely received warnings not to divulge information from counsel, he nonetheless conducted an independent investigation. His investigation uncovered evidence that weighs against transfer, such as the witness . . . in Austin." *Id.* (internal citations omitted). Mr. Rope has time to investigate the facts because he performs these types of investigations for Google as his full-time job. *Id.* The opposing party ultimately presented evidence of numerous types of

8

employees who worked on other accused products that Mr. Rope never identified, but this did not contradict Mr. Rope's testimony because Mr. Rope made clear that his declaration was limited only to certain products and to certain types of employees. *Id.*

Apple has a history of evading its discovery obligations. In response to an interrogatory for details about the location of its servers, Apple responded "the details regarding Apple's servers are wholly irrelevant to the issue of the convenience of venue under 28 U.S.C. § 1404(a), especially given Apple has already represented that electronic documents concerning the Apple Products reside on local servers located or accessible in or around NDCA." *Scramoge Tech. Ltd. v. Apple Inc.*, No. 6:21-CV-00579-ADA (W.D. Tex. Mar. 22, 2022) ECF No. 67 at 4. The location of Apple's servers directly relates to the transfer factor about the convenience of evidence. When compared to forthcoming defendants like Meta, the Court is left to wonder why Apple is hiding such basic, relevant information.

The Court explained its concerns with Apple's repeated use of Mr. Rollins as an unreliable venue declarant in the Scramoge Case. *Scramoge Tech. Ltd. v. Apple Inc.*, No. 6:21-CV-00579-ADA, 2022 WL 1667561, at *2–4 (W.D. Tex. May 25, 2022) ("Scramoge Case"). At that time, Scramoge was the only plaintiff to seriously challenge Mr. Rollins's credibility. *Id.* at n.3.[1] Absent opposition, the Court would routinely take Mr. Rollins at his word, and the Court will still selectively take him at his word when he gives plain, unqualified, informed statements of fact.

To summarize the problems with Mr. Rollins, he appears to do little investigation into the facts as a 30(b)(6) witness and instead serves as a mouthpiece for attorney argument. He works as a full-time finance manager for Apple but somehow investigates more patent cases than full-time

---

[1] Apple routinely seals the declarations of Mr. Rollins, so it is difficult for the public to access them.

9

experts. *Id.* at *2–3 (collecting just a fraction of Mr. Rollins's declarations to show the unreasonable quantity). He explains complex technologies despite not being qualified as an expert. *Id.* He only vaguely describes what he does to prepare as a 30(b)(6) witness, leaving the Court to assume that he merely reviews attorney-fed information instead of conducting a reasonable investigation. *Id.* The Court has noticed the pattern of Mr. Rollins plainly declaring unqualified facts that support transfer, but when he gives facts about topics that might weigh against transfer, his statements suddenly become limited to his personal knowledge, suggesting that Mr. Rollins does not do an equally confident investigation into facts that weigh against transfer. *E.g., id.* at *3–4; *see also* Scramoge Case, ECF No. 81 at 6.

As a result of this Court's opinion in the Scramoge Case, Apple sought to supplement Mr. Rollins's declarations in several pending cases, including the present case. *See, e.g.,* ECF No. 55.

## F. Deficiencies in the evidence prevent the Court from making an informed decision in this case

In this case, the declaration and testimony by Mark Rollins is unreliable evidence because it shares the deficiencies noted above. He is evasive in deposition. ECF No. 29-2 at 43:5–46:6. Rather than performing a reasonable investigation on deposition topics, Mr. Rollins again received selectively fed information from Apple's counsel. ECF No. 26 at 6 (quoting deposition excerpts). Unlike Mr. Rope who spent many days talking to over twenty individuals, Mr. Rollins did not feel the need to undertake an investigation of similar scope and did not talk to anyone in Apple's 7,000-employee Austin campus as part of his investigation. *Id.* at 7.

Given his full-time job as a financial manager at Apple, Mr. Rollins lacks the time to properly investigate the accused products in this case. ECF No. 23-1 ¶¶ 1, 5. Mr. Rope needed to investigate at least 50 different products, including numerous makes and models of the Apple TV;

10

iPhones 12, 11, 8, 7, 6; iPad generations 1-5; iPad minis 2-4; and MacBook Pros and MacBook Airs from 2016 to 2020. *Id.* at 5. To find the witnesses and evidence related to these 50 products, Mr. Rollins spoke to just five people at Apple. ECF No. 23-1 ¶¶ 7, 9, 10, 13, 14. For comparison, Mr. Rope spoke with over twenty people when investigating just four Google products. Google Case, ECF No. 35-1 ¶ 5. The Court appreciates that a supplier may supply the WiFi chip(s) shared across the accused products, but it is still unlikely that just five people at Apple can reliably inform Mr. Rollins about all the witnesses and evidence related to over fifty products. ECF No. 55-4 ¶ 6.

Mr. Rollins's declaration again employs his usual crafty and qualifying language, such as "*To my knowledge*, Apple does not have any *unique* working files or documents *relevant* to this case located in the WDTX." *Id.* ¶ 6 (emphasis added). This type of language suggests that Mr. Rollins knows about redundant evidence in the WDTX or that such evidence may exist but is not known to Mr. Rollins because he failed to investigate it. Also embedded in this statement is Mr. Rollins's determination of what is "relevant to this case." *Id.* Mr. Rollins isn't even sure of what "RF" is and how it relates to WiFi. ECF No. 29-2 at 90:14-17 ("I'm not an engineer, my understanding is RF, I think, relates to radiofrequency and I'm not 100 percent sure if radiofrequency is – includes, for example, WiFi."). Mr. Rollins is wholly unqualified to be making determinations of technological relevance in a patent case where the claims cover an antenna, transceiver, and processor configured to process wireless signals in a very particular way. ECF No. 1-1 at 32:33-60.

As a result of relying on a financial manager who doesn't know the difference between RF and WiFi to perform Apple's investigation of "relevant" evidence and witnesses in this complex patent case, the party opposing Apple's transfer motion has again found evidence that contradicts the personal understanding of Mr. Rollins. Mr. Rollins's personal understanding is that "all of

11

Apple's United States-based engineers who participated in or are knowledgeable about the research, design, development or integration of the WiFi technology within the Accused WiFi Products work in California and none work in Texas." ECF No. 23-1. But back in October of 2021, Apple was hiring a wireless module engineer to drive RF module and component vendor meetings for its Austin, Texas location. ECF No. 29-4. It is undisputed that one of the accused products, the Mac Pro, is manufactured in Austin. ECF No. 29 at 4 (citing deposition testimony). It remains unclear how Mr. Rollins determined that Apple's 7,000 employees in Austin do not work on integrating the WiFi chip for manufacturing without even speaking anyone in Austin.

By failing to identify *any* relevant people in Texas, Mr. Rollins perpetuates the Court's concern that Apple is somehow crafting an overly narrow definitions of relevant technology or otherwise avoiding its discovery obligations. The Court has no concern if an investigation finds no one in Texas in an individual case—the concern arises only when companies with a large presence in Texas repeatedly tell the Court that its employees don't work on entire lines of products without ever explaining what those employees work on. For comparison, comparable tech companies like Meta and Google will, upon thoroughly investigating a major product, routinely find *some* people or evidence in Texas. *See, e.g.* Meta Case at ECF No. 40-11 (sealed interrogatory response identifying employees in Texas, California, and elsewhere). Even if the bulk of a team works at a company's headquarters in California, it is exceedingly likely in the modern, post-COVID era that some employee works remotely from Texas or in its neighboring states, especially in cases involving big tech companies. By diligent investigation, Meta and Google routinely find these individuals and identify them during discovery. Mr. Rollins rarely does.

Apple has a campus of about 7,000 employees in Austin. ECF No. 29 at 7. Apple would have the Court believe that none of those employees in Austin relate to this case where the accused

12

products cover 50 different Apple products, including numerous makes and models of the Apple TV; iPhones 12, 11, 8, 7, 6; iPad generations 1-5; iPad minis 2-4; and MacBook Pros and MacBook Airs from 2016 to 2020. Mr. Rollins did not talk any Texas Apple employees and, across the numerous cases that he provided a declaration in, has yet to explain what Apple's 7,000 employees work on in Austin. In case after case, Apple argues that no one in Austin works on whatever Apple product happens to be accused, ultimately giving the Court the cumulative, puzzling, and unbelievable impression that there are no Apple products left for these 7,000 employees to work on.

### G. The revised schedule is fairest for everyone

The Court is left with the decision of how to rule on Apple's venue motion when Apple's primary venue declaration about the "relevant" employees and evidence comes from a declarant doesn't know the difference between WiFi and RF and hasn't spoken to a single person in Texas. The Court will not allow a defendant to benefit from delaying the case schedule and extend venue discovery by using an incompetent witness. At the same time, the Court is reluctant to strike Mr. Rollins's declaration without giving Apple a chance to fix the issues. The Court wants the parties to specifically identify the relevant evidence and witnesses rather than speculate about them.

The fairest process for everyone is to proceed according to the amended schedule attached as Appendix A. By completing discovery, the parties can present the Court with the relevant evidence and witnesses instead of the parties' speculations about relevant evidence and witnesses. Otherwise, the Court would be inclined to assume that Apple is being evasive and make adverse inferences against Apple. Apple has been harmed by this Court's inaccurate determinations in the past. *See, e.g., Koss Corp. v. Apple Inc.*, No. 6-20-CV-00665-ADA, 2021 WL 5316453, at *6 (W.D. Tex. Apr. 22, 2021) (inaccurately determining the relevance of a witness against Apple's

13

favor because the Court lacked the benefit of the parties' witness lists). Under the amended schedule, both parties will have a fair opportunity to file new replacement briefs, present new evidence, and make new arguments.

Reopening venue discovery would waste resources because at this point, reopened venue discovery is likely to substantially overlap with fact discovery. The parties will be asking each other to turn over the actual evidence and depose witnesses about their knowledge and relevance to support the transfer factor analysis.

## H. CONCLUSION

Apple's venue declarant has provided such unreliable evidence that the Court cannot accurately rule on the motion to transfer. The Court finds it prudent to have the parties engage in additional discovery before re-briefing the motion to transfer in accordance with the appended schedule. **IT IS HEREBY ORDERED** that:

1) Full fact discovery is now open.

2) The Court's earlier Discovery and Scheduling Order, ECF No. 68 is **VACATED**.

3) Apple's Motion for Leave, ECF No. 55, is **GRANTED-IN-PART**. Apple may file any new arguments and evidence in accordance with the new schedule.

4) Apple's Motion to Stay, ECF No. 70, pending review of a vacated decision is **MOOT**.

5) All other scheduled deadlines are vacated.

6) The parties shall meet and confer to file a joint motion to enter a scheduling order for replacement briefing based on the appended schedule within two weeks.

SIGNED this 9th day of September, 2022.

ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE

14

## APPENDIX A – EXEMPLARY SCHEDULE

| Deadline | Item |
| --- | --- |
| 8 weeks after receiving or waiving service of complaint or 3 weeks after the CMC, whichever is later. | Deadline to file a motion for inter-district transfer. After this deadline, movants must seek leave of Court and show good cause for the delay. |
| 7 days before CMC | Plaintiff serves preliminary[2] infringement contentions in the form of a chart setting forth where in the accused product(s) each element of the asserted claim(s) are found. Plaintiff shall also identify the earliest priority date (*i.e.* the earliest date of invention) for each asserted claim and produce: (1) all documents evidencing conception and reduction to practice for each claimed invention, and (2) a copy of the file history for each patent in suit. |
| 2 weeks after CMC | The Parties shall file a motion to enter an agreed Scheduling Order. If the parties cannot agree, the parties shall submit a separate Joint Motion for entry of Scheduling Order briefly setting forth their respective positions on items where they cannot agree. Absent agreement of the parties, the Plaintiff shall be responsible for the timely submission of this and other Joint filings. |
| 7 weeks after CMC | Defendant serves preliminary invalidity contentions in the form of (1) a chart setting forth where in the prior art references each element of the asserted claim(s) are found, (2) an identification of any limitations the Defendant contends are indefinite or lack written description under section 112, and (3) an identification of any claims the Defendant contends are directed to ineligible subject matter under section 101. Defendant shall also produce (1) all prior art referenced in the invalidity contentions, and (2) technical documents, including software where applicable, sufficient to show the operation of the accused product(s). |
| 9 weeks after CMC | Parties exchange claim terms for construction. |

---

[2] The parties may amend preliminary infringement contentions and preliminary invalidity contentions without leave of court so long as counsel certifies that it undertook reasonable efforts to prepare its preliminary contentions and the amendment is based on material identified after those preliminary contentions were served and should do so seasonably upon identifying any such material. Any amendment to add patent claims requires leave of court so that the Court can address any scheduling issues.

15

| 11 weeks after CMC | Parties exchange proposed claim constructions. |
|---|---|
| 12 weeks after CMC | Parties disclose extrinsic evidence. The parties shall disclose any extrinsic evidence, including the identity of any expert witness they may rely upon with respect to claim construction or indefiniteness. With respect to any expert identified, the parties shall identify the scope of the topics for the witness's expected testimony.[3] With respect to items of extrinsic evidence, the parties shall identify each such item by production number or produce a copy of any such item if not previously produced. |
| 13 weeks after CMC | Deadline to meet and confer to narrow terms in dispute and exchange revised list of terms/constructions. |
| 14 weeks after CMC | Defendant files Opening claim construction brief, including any arguments that any claim terms are indefinite. |
| 17 weeks after CMC | Plaintiff files Responsive claim construction brief. |
| 19 weeks after CMC | Defendant files Reply claim construction brief. |
| 19 weeks after CMC | Parties to jointly email the law clerks (*see* OGP at 1) to confirm their *Markman* date and to notify if any venue or jurisdictional motions remain unripe for resolution. |
| 21 weeks after CMC | Plaintiff files a Sur-Reply claim construction brief. |
| 3 business days after submission of sur-reply | Parties submit Joint Claim Construction Statement and email the law clerks an editable copy.<br><br>*See* General Issues Note #7 regarding providing copies of the briefing to the Court and the technical advisor (if appointed). |
| 22 weeks after CMC (but at least 10 days before *Markman* hearing) | Parties submit optional technical tutorials to the Court and technical advisor (if appointed). |
| 23 weeks after CMC (or as soon as practicable)[4]<br><br>---DELAYED--- | *Markman* Hearing at 9:00 a.m. This date is a placeholder and the Court may adjust this date as the *Markman* hearing approaches. |

---

[3] Any party may utilize a rebuttal expert in response to a brief where expert testimony is relied upon by the other party.
[4] All deadlines hereafter follow the original *Markman* hearing date and do not change if the Court delays the *Markman* hearing.

16

|  | **The Markman hearing is delayed until the Court resolves the transfer motion.** |
|---|---|
| 1 business day after *Markman* hearing | Fact Discovery opens; deadline to serve Initial Disclosures per Rule 26(a). |
| 6 weeks after *Markman* hearing | Deadline to add parties. |
| 8 weeks after *Markman* hearing | Deadline to serve Final Infringement and Invalidity Contentions. After this date, leave of Court is required for any amendment to infringement or invalidity contentions. This deadline does not relieve the parties of their obligation to seasonably amend if new information is identified after initial contentions. |
| 16 weeks after *Markman* hearing | Deadline to amend pleadings. A motion is not required unless the amendment adds patents or patent claims. (Note: This includes amendments in response to a 12(c) motion.) |
| **26 weeks after *Markman*** | **Deadline for the first of two meet and confers to discuss significantly narrowing the number of claims asserted and prior art references at issue to triable limits (10 hours of trial per side).** |
| **29 weeks after *Markman*** | **Deadline for the second of two meet and confers to discuss significantly narrowing the number of claims asserted and prior art references at issue to triable limits. Unless the parties agree to the narrowing, they are ordered to contact the Court's law clerk to arrange a teleconference with the Court to resolve the disputed issues.** |
| 30 weeks after *Markman* hearing | Close of Fact Discovery.<br><br>**Parties shall exchange preliminary exhibit lists and witness lists. The preliminary exhibit lists and witness lists may be freely amended in good faith so long as the amendments do not amount to transfer motion gamesmanship.** |
| **32 weeks after *Markman*** | **Deadline for Plaintiff's replacement transfer opposition brief (15 pages).** |
| **34 weeks after *Markman*** | **Deadline for Defendant's replacement transfer reply brief (15 pages).** |

17

| 36 weeks after *Markman* | Deadline for Plaintiff's replacement transfer sur-reply brief (10 pages). |
|---|---|
| 40 weeks after *Markman hearing* | **Markman hearing delayed to this date.** |
| 42 weeks after *Markman* hearing | Opening Expert Reports. |
| 45 weeks after *Markman* hearing | Rebuttal Expert Reports. |
| 48 weeks after *Markman* hearing | Close of Expert Discovery. |
| 50 weeks after *Markman* hearing | Dispositive motion deadline and *Daubert* motion deadline.<br><br>See General Issues Note #7 regarding providing copies of the briefing to the Court and the technical advisor (if appointed). |
| 52 weeks after *Markman* hearing | Serve Pretrial Disclosures (jury instructions, exhibits lists, witness lists, discovery and deposition designations). |
| 54 weeks after *Markman* hearing | Serve objections to pretrial disclosures/rebuttal disclosures. |
| 55 weeks after *Markman* hearing | Serve objections to rebuttal disclosures; file Motions *in limine.* |
| 56 weeks after *Markman* hearing | File Joint Pretrial Order and Pretrial Submissions (jury instructions, **final** exhibits lists, **final** witness lists, discovery and deposition designations); file oppositions to motions *in limine* |
| 57 weeks after *Markman* hearing | File Notice of Request for Daily Transcript or Real Time Reporting. If a daily transcript or real time reporting of court proceedings is requested for trial, the party or parties making said request shall file a notice with the Court and email the Court Reporter, Kristie Davis at kmdaviscsr@yahoo.com<br><br>Deadline to meet and confer regarding remaining objections and disputes on motions *in limine*. |
| 8 weeks before trial | Parties to jointly email the Court's law clerk (*See* OGP at 1) to confirm their pretrial conference and trial dates. |

| 3 business days before Final Pretrial Conference. | File joint notice identifying remaining objections to pretrial disclosures and disputes on motions *in limine*. |
|---|---|
| **59** weeks after *Markman* hearing (or as soon as practicable) | Final Pretrial Conference. Held in person unless otherwise requested. |
| **60** weeks after *Markman* hearing (or as soon as practicable)[5] | Jury Selection/Trial. |

---

[5] If the actual trial date materially differs from the Court's default schedule, the Court will consider reasonable amendments to the case schedule post-*Markman* that are consistent with the Court's default deadlines in light of the actual trial date.

19